511 So.2d 526 (1987)
Jerry Layne ROGERS, Appellant,
v.
STATE of Florida, Appellee.
No. 66356.
Supreme Court of Florida.
July 9, 1987.
Rehearing Denied September 2, 1987.
*529 James B. Gibson, Public Defender, Seventh Judicial Circuit, and Christopher S. Quarles, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
BARKETT, Justice.
Jerry Layne Rogers appeals his conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm both the conviction and sentence.
On December 19, 1983, Rogers was indicted for the first-degree murder of David Eugene Smith. The evidence at trial revealed that Rogers and Thomas McDermid, the state's chief witness, rented a car on January 4, 1982, in Orlando. By his own admission, Rogers personally signed the rental agreement.[*] After picking up two.45 caliber semi-automatic handguns, the pair drove to St. Augustine and "cased" an A & P and a Winn-Dixie grocery store. Deciding to rob the Winn-Dixie, Rogers and McDermid pulled into an adjoining motel parking lot, donned rubber gloves and nylon-stocking masks and proceeded inside. There, McDermid ordered the cashier, Ketsey Day Supinger, to open her register. When Supinger had difficulty complying, Rogers told McDermid to "forget it," and the two men ran out of the store toward their rental car. Rogers, however, trailed somewhat behind. During this interval, McDermid said he heard an unfamiliar voice behind him say, "No, please don't." These words were followed by the sound of one shot, a short pause, and two more shots.
On the drive back to Orlando with McDermid, Rogers allegedly said he had seen a man, the victim, slipping out the back of the store during the attempted robbery. At trial, McDermid testified that Rogers said the victim "was playing hero and I shot the son of a bitch."
Smith, the victim, in fact had been shot three times, once in the right shoulder and twice in the lower back. Police investigators later found three .45 caliber casings within six feet of the body. At trial a pathologist testified that two of the three shots, those to the back, caused severe damage to the lungs and a fatal loss of blood. In the pathologist's opinion, these two shots struck the victim while he was face-forward against a hard surface such as a pavement, resulting in characteristic exit wounds.
Following the murder, Rogers and McDermid were identified as suspects in a subsequent grocery-store robbery in Winter Park. Police obtained a warrant to search Rogers' home and there seized a number of firearms, a .45 caliber handgun and several boxes of spent .45 caliber shell casings that Rogers intended to reload for reuse. Analysis by firearms experts indicated that the casings found near the victim's body had not been fired by the gun taken from Rogers' home. However, sixtynine of the spent casings seized by police had been fired by the same weapon that killed Smith.
At trial, the jury found Rogers guilty of murder and recommended imposition of the *530 death penalty. The trial court found five separate aggravating circumstances and no mitigating factors and sentenced Rogers to death.
Rogers raises thirteen issues on appeal. Rogers first contends that the failure to provide written instructions for the jury to take into their deliberations was reversible error. This issue already has been resolved adversely to appellant in Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984). Florida Rule of Criminal Procedure 3.400 gives the trial court discretion to provide or not to provide written instructions. We recognize the efficacy of assisting the jury in understanding its task, and, although sending written instructions to the jury should be encouraged, we find no error here.
Second, Rogers questions whether the trial judge improperly excluded testimony meant to impeach McDermid based on an alleged reputation for dishonesty. We find no error because Rogers failed to provide the necessary predicate for such testimony. Extrinsic evidence of reputation is properly admitted when both the witness and the object of the testimony are members of the same general community of neighbors and associates. Reputation testimony is also permissible when members of that community are demonstrably unavailable if the trial court finds that the witness has sufficient knowledge to give a reliable assessment based on more than mere personal opinion, fleeting encounters, or rumor. See Hamilton v. State, 129 Fla. 219, 176 So. 89 (1937). Here, the only predicate in the record was the following colloquy:
Q: Now did you have the means to know the reputation for the truth and veracity of Thomas McDermid in his community?
A: Except what I've heard, you know, from people. Personally I didn't, because I didn't associate with him anymore than I had to.
The trial court did not err in finding that this was an insufficient basis for the admission of reputation testimony.
Similarly, Rogers argues that the court improperly excluded (1) medical records showing that a state witness, James Lancia, was a mentally unbalanced individual who suffered from delusions and hallucinations during his jail stay; (2) evidence that McDermid threatened to implicate members of Rogers' family in criminal conduct; and (3) the written version of a St. Augustine police bulletin issued the night of the murder. We find no error, since this evidence was cumulative. The trial court has discretion to exclude evidence that does no more than corroborate other evidence already before the jury. Sims v. State, 444 So.2d 922 (Fla. 1983), cert. denied, 467 U.S. 1246, 104 S.Ct. 3525, 82 L.Ed.2d 832 (1984). In this case, Lancia's medical records were cumulative of evidence presented by both Lancia himself and the medical supervisor of the jail. Lancia testified that he suffered from depression and took medication for this condition. Carol Guemple, the medical supervisor, testified that Lancia had been receiving psychotropic medication to control his hallucinations and delusions during his jail stay. Similarly, McDermid freely admitted on the stand that he had made threats against members of Rogers' family. Finally, although the written police bulletin was not admitted into evidence, its contents were read to the jury.
In the same vein, Rogers argues that the trial court erred in limiting the testimony of John Brigham, an expert in the accuracy of eyewitness identifications. We disagree. This precise issue was considered in Johnson v. State, 393 So.2d 1069 (Fla. 1980). In Johnson, this Court ruled that the trial court's exclusion of an expert witness who would have testified about the fallibility of eyewitness perception and identification did not constitute an abuse of discretion. Moreover, in this case appellant was permitted to ask his expert hypothetical questions concerning an eyewitness' ability to make an accurate identification several months or years after the fact.
*531 As his third point on appeal, Rogers contends the trial court erred in not dismissing the indictment because it was issued by a grand jury whose members included Robert Supinger, father-in-law of the Winn-Dixie cashier on duty when the store was robbed. We note that at the time of the indictment this relationship did not exist, since the marriage between the cashier and Supinger's son did not occur until later. Even assuming arguendo that this grand juror was biased and participated in returning the indictment, the petit jury's subsequent guilty verdict rendered any resulting error presumptively harmless. Porter v. Wainwright, 805 F.2d 930, 941 (11th Cir.1986). Rogers has not presented any evidence to defeat this presumption, such as impropriety in constituting the grand jury or serious prosecutorial misconduct during grand jury proceedings. See id. at 941-42. Nor can we independently discern any resultant harm from the record. Accordingly, any error arising from the indictment was harmless.
Fourth, Rogers urges us to overturn his conviction based on alleged prejudice caused by the state's delay of nearly a year in obtaining its indictment. During this period, argues Rogers, the memories of those familiar with the St. Augustine murder faded and two alibi witnesses, John and Laura Norwood, allegedly disappeared. We reject this contention as mere speculation unsupported by any substantial evidence and find no error, since Rogers has failed to meet his burden of showing actual prejudice. In reaching this conclusion, we approve the test applied by the First District in Howell v. State, 418 So.2d 1164 (Fla. 1st DCA 1982) (adopted from United States v. Townley, 665 F.2d 579 (5th Cir.1982)). When a defendant asserts a due process violation based on preindictment delay, he bears the initial burden of showing actual prejudice. Rogers has not met this burden through the speculative allegations made here of faded memories or the purported disappearance of alibi witnesses whose significance or existence was doubtful. See Howell, 418 So.2d at 1170. If the defendant meets this initial burden, the court then must balance the demonstrable reasons for delay against the gravity of the particular prejudice on a case-by-case basis. The outcome turns on whether the delay violates the fundamental conception of justice, decency and fair play embodied in the Bill of Rights and fourteenth amendment. See Townley, 665 F.2d at 581-82. Because Rogers has not met his initial burden of proof, we conclude that he has suffered no prejudice proscribed by the constitution.
As his fifth argument, Rogers contends that the trial court erred in admitting evidence of collateral crimes, specifically of two grocery-store robberies by Rogers and McDermid subsequent to the St. Augustine murder. We disagree. The trial court, listing the following similarities, correctly deemed the collateral-crimes evidence a "close, well-connected chain of similar facts" between all the robberies:
1) Target is a chain-type grocery store.
2) Robbery takes place just prior to closing.
3) Two white males involved, one slightly taller than the other. Both in the mid twenties or early thirties.
4) Both wear nylon stocking masks.
5) Each carries an automatic type firearm (handgun).
6) One robber directs his attention to the cash registers, while the other seeks out the office and office safe area containing cash receipts.
7) Both robbers direct patrons and employees to "lay on the floor."
8) Unnecessary violence and physical contact with victims is sought to be avoided.
9) Bags are used to secure money, plastic or pillow cases.
10) Tom McDermid was one of two participants.
Nor does the record support appellant's contention that the collateral crime evidence became a "feature of the trial." We thus conclude that this evidence met the standard for admission set out in Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), and continuously reaffirmed by this *532 Court. See also § 90.404(2)(a), Fla. Stat. (1985).
Sixth, Rogers contends that Ketsey Supinger's eyewitness identification of him was tainted by a suggestive procedure used by the state. In violation of a trial court order, the state had engaged Supinger in a photo "lineup" without notifying Rogers, who was acting pro se. The state conducted this lineup immediately prior to a deposition Rogers had scheduled with Supinger, their first encounter since the attempted robbery. At the lineup, Supinger was only able to narrow the possibilities to two photographs, including one of Rogers. However, after the deposition conducted by Rogers, Supinger understandably had less difficulty identifying him. Subsequently, the trial court suppressed all material obtained from the improper photo lineup. On appeal, Rogers contends that the in-court identification of him also should have been suppressed as tainted. We disagree. In cases such as this one, the courts first must ask whether the procedure in fact was suggestive and, if so, whether it resulted in a substantial risk of irreparable misidentification. Grant v. State, 390 So.2d 341, 343 (Fla. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981). Here, we find no suggestive procedure. In effect, Rogers argues that Supinger was able to identify him in court because of the deposition, which Rogers himself requested and conducted.
Seventh, Rogers argues that the trial court improperly allowed prejudicial hearsay testimony into evidence. He cites two instances. First, Rogers points to the state's cross-examination of a correctional officer, Michael Todd, about an incident in the Orange County jail. During his direct examination, Rogers had elicited testimony from Todd that while in jail McDermid had tried to attack Rogers, requiring four officers to restrain him. On cross, the court permitted Todd to testify that McDermid said he had attacked Rogers because Rogers was trying to have him hurt and was spreading word that McDermid was a police informant. We find no error in the admission of this testimony. In presenting part of the transaction in question, Rogers opened the door to the remainder. See McCrae v. State, 395 So.2d 1145, 1152 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981). Second, Rogers argues that the trial court improperly allowed the state to elicit hearsay testimony from Steven Young, Rogers' brother-in-law, about alleged ill-will between Rogers and his mother-in-law, Maxine Arzberger. We do find error in some of Young's testimony, particularly his speculation about the duration and reasons for Arzberger's disagreement with Rogers. The state should have restricted its questioning to Young's personal observations while he was a guest in Arzberger's home. However, we note that the substance of this hearsay testimony had already been presented to the jury during the cross-examination of Arzberger herself. Under these circumstances, the error in admitting Young's hearsay testimony was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
As his eighth claim, Rogers urges that the trial court erred in letting the state impeach a defense witness, Hubert Reynolds, based on evidence of pending charges against him. Reynolds had testified that, while in jail, McDermid confessed to the murder. We agree with Rogers that the state's impeachment of Reynolds violated Fulton v. State, 335 So.2d 280 (Fla. 1976). This Court in Jordan v. State, 107 Fla. 333, 335, 144 So. 669, 670 (1932), stated the Florida view, as follows: "It is only permitted to interrogate witnesses as to previous convictions, not mere former arrests or accusations, for crime." Moreover, "evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness." Watson v. Campbell, 55 So.2d 540, 541 (Fla. 1951). However, we again find the error harmless since Reynolds was one of three witnesses testifying to McDermid's alleged statements that Rogers was not the murderer. See Parker v. State, 458 So.2d 750, 754 (Fla. 1984), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).
*533 We find no error in Rogers' ninth contention that the trial court erred in denying his motion to suppress evidence seized from his home and business.
Nor is there merit to the tenth issue on appeal wherein Rogers argues that the trial court improperly denied him a chance to state his objection to the admission of tape-recorded prior inconsistent statements by witness Arzberger. The tape recordings were proper impeachment evidence. On appeal, Rogers cites Pender v. State, 432 So.2d 800 (Fla. 1st DCA 1983), as mandating reversal in this instance. Pender, however, stands for the proposition that a trial court may not refuse a proffer of testimony necessary to preserve a point on appeal. Here, the propriety of admitting Arzberger's prior inconsistent statements can be determined from the record. The evil addressed by Pender is not threatened, and we therefore find no error.
Eleventh, Rogers contends that during the penalty phase the trial court improperly permitted the state to introduce evidence of a nonstatutory aggravating circumstance, Rogers' alleged violence during an incident in a restaurant. We agree that this testimony violated Elledge v. State, 346 So.2d 998 (Fla. 1977), and we admonish the state to confine its evidence during the penalty phase to those matters provided by statute. See § 921.141, Fla. Stat. (1985). However, we find no error. The testimony in question was presented to impeach prior testimony to which the defense had raised no objection, and in any event was not prejudicial.
In his twelfth point, Rogers challenges the trial court's finding that the murder was accompanied by five aggravating and no mitigating circumstances. We agree that three of the five aggravating circumstances were not present. The court's conclusion that the murder was for pecuniary gain is not supported by the record, since the killing occurred during flight and thus was not a step in furtherance of the sought-after gain. See Simmons v. State, 419 So.2d 316 (Fla. 1982). Even if it had been, the desire for pecuniary gain would have merged with the aggravating circumstance of flight from an attempted robbery. Riley v. State, 366 So.2d 19 (Fla. 1978). Nor do we find that the killing was to avoid or prevent lawful arrest. This particular factor requires clear proof beyond a reasonable doubt that the killing's dominant or only motive was the elimination of a witness. Id.; Menendez v. State, 368 So.2d 1278, 1282 (Fla. 1979). Here, the trial court presumed this intent based solely on the circumstances of the murder and Rogers' alleged statement that he shot the victim for trying to be a hero. We find that this evidence falls short of the "clear proof" required by Menendez and Riley.
We also find that the murder was not cold, calculated and premeditated, because the state has failed to prove beyond a reasonable doubt that Rogers' actions were accomplished in a "calculated" manner. In reaching this conclusion, we note that our obligation in interpreting statutory language such as that used in the capital sentencing statute, is to give ordinary words their plain and ordinary meaning. See Tatzel v. State, 356 So.2d 787, 789 (Fla. 1978). Webster's Third International Dictionary at 315 (1981) defines the word "calculate" as "[t]o plan the nature of beforehand: think out ... to design, prepare or adapt by forethought or careful plan." There is an utter absence of any evidence that Rogers in this case had a careful plan or prearranged design to kill anyone during the robbery. While there is ample evidence to support simple premeditation, we must conclude that there is insufficient evidence to support the heightened premeditation described in the statute, which must bear the indicia of "calculation." Since we conclude that "calculation" consists of a careful plan or prearranged design, we recede from our holding in Herring v. State, 446 So.2d 1049, 1057 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984), to the extent it dealt with this question.
As to the two remaining aggravating circumstances, we find that the record supports the trial court's conclusions. We agree with the court below, and Rogers *534 himself concedes in his brief on appeal, that the murder occurred during flight from an attempted robbery. We also agree, and Rogers does not dispute, that the murder was by one previously convicted of a felony involving the use or threat of violence.
Rogers next urges error in the trial court's failure to find five mitigating factors: (1) that his demeanor in court showed that he is intelligent and articulate, (2) that he suffered trauma as a child because he thought his mother was dead when in fact she wasn't, (3) that he was a decorated serviceman, (4) that Rogers' accomplice, McDermid, received a net sentence of only twenty-five years, and (5) that he was a good husband, father and provider.
There appears to be some confusion over the concept of mitigation as set forth in our death penalty statute, which requires "specific written findings of fact based upon [aggravating and mitigating] circumstances ... and upon the records of the trial and the sentencing proceedings." § 921.141(3), Fla. Stat. (1985). However, a "finding" that no mitigating factors exist has been construed in several different ways: (1) that the evidence urged in mitigation was not factually supported by the record; (2) that the facts, even if established in the record, had no mitigating value; or (3) that the facts, although supported by the record and also having mitigating value, were deemed insufficient to outweigh the aggravating factors involved.
However, any consideration of mitigation must fall within certain established guidelines. In the context of the death penalty, the concept of mitigation requires that the court
not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death... . Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases. The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases.
Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2958, 2964-65, 57 L.Ed.2d 973 (1978) (emphasis in original, footnote omitted). Moreover,
[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.... The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.
Eddings v. Oklahoma, 455 U.S. 104, 114-15, 102 S.Ct. 869, 876-77, 71 L.Ed.2d 1 (1982) (emphasis in original, footnote omitted). See also Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).
Mindful of these admonitions, we find that the trial court's first task in reaching its conclusions is to consider whether the facts alleged in mitigation are supported by the evidence. After the factual finding has been made, the court then must determine whether the established facts are of a kind capable of mitigating the defendant's punishment, i.e., factors that, in fairness or in the totality of the defendant's life or character may be considered as extenuating or reducing the degree of moral culpability for the crime committed. If such factors exist in the record at the time of sentencing, the sentencer must determine whether they are of sufficient weight to counterbalance the aggravating factors.
Under this analysis, we find no merit to Rogers' assertion that the court erred in failing to find in mitigation that he was intelligent and articulate. Although the record compels a factual finding that Rogers possesses these qualities, this finding standing alone does not extenuate or reduce moral culpability. To the contrary, *535 intelligence and articulateness in the context of this case establish only that Rogers was capable of understanding the criminality of his conduct. Thus, this factor cannot be placed on the countervailing scale.
The effects produced by childhood traumas, on the other hand, indeed would have mitigating weight if relevant to the defendant's character, record, or the circumstances of the offense. See Eddings, 455 U.S. at 112-13, 102 S.Ct. at 875-76. However, in the present case Rogers' alleged childhood trauma does not meet this standard of relevance. No testimony on this question was presented during the penalty phase, and Rogers raised the issue for the first time on appeal. Indeed, the only evidence of such a trauma in the record is the following notation in the presentence investigation:
[Rogers] was raised under the impression that his mother was dead but found out that she was not dead when he went in the service... . As far as his mental health, [Rogers says] "I'd say I'm in pretty good shape considering the stress I've been under. The strain, worrying about my family."
We thus find that the record factually does not support a conclusion that Rogers' childhood traumas produced any effect upon him relevant to his character, record or the circumstances of the offense so as to afford some basis for reducing a sentence of death. See Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).
In the same vein and in light of the admonition that judges may not refuse to consider relevant mitigating evidence, Eddings, 455 U.S. at 115-16, 102 S.Ct. at 877, we agree that being a good husband and father or having a good service record are factors to be weighed in mitigation. Evidence of contributions to family, community, or society reflects on character and provides evidence of positive character traits to be weighed in mitigation. See Lockett, 438 U.S. at 604-05, 98 S.Ct. at 2964-65. The record does not disclose that the state contested the testimony of Rogers' wife that he was a good father, husband and provider. However, we find that the record contains an insufficient factual basis establishing the decorations Rogers received while in the Navy and the purpose of them. Rogers did not raise this issue until his appeal and bases his argument on a single sentence in his presentence investigation that says only that Rogers claims to have received decorations. Absent proof of the decorations, we cannot fault the trial court for finding no mitigating factor under these circumstances.
As to the final mitigating factor urged by Rogers, we acknowledge and reaffirm our prior decisions that lesser sentences imposed on accomplices may be considered in mitigation, see, e.g., Gafford v. State, 387 So.2d 333 (Fla. 1980), and that "[d]efendants should not be treated differently upon the same or similar facts." Slater v. State, 316 So.2d 539, 542 (Fla. 1975). However, we find that an accomplice's sentence is irrelevant where, as here, the evidence shows that the accused perpetrated the murder without aid or counsel from the accomplice. Where the facts are not the same or similar for each defendant, unequal sentences are justified. Jackson v. State, 366 So.2d 752, 757 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979).
Based on our analysis, we find no error in the sentence imposed. Reversal of Rogers' sentence is permitted only if this Court can say that the errors in weighing aggravating and mitigating factors, if corrected, reasonably could have resulted in a lesser sentence. If there is no likelihood of a different sentence, the error must be deemed harmless. See State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986). Here, we have determined that the murder was committed by one previously convicted of a violent felony, and that it occurred during flight from an attempted robbery. On the other hand, the trial court may have found that Rogers was a good father, husband and provider. Under these circumstances, we cannot say that there is any reasonable likelihood the trial court would have concluded that the aggravating circumstances were outweighed by the single mitigating factor. Id. We therefore find the error harmless beyond a reasonable doubt.
*536 Rogers also attacks his death sentence on grounds that the trial court gave undue weight to the jury's recommendation of the death penalty. We find this contention without merit. The trial court in imposing sentence must exercise independent discretion, serving in effect as a final check and balance in the process. However, the mere fact that the trial judge agrees with the jury's recommendation is not error where the record reflects, as here, that the court has weighed relevant factors and reached its own independent judgment about the reasonableness of the jury's recommendation. See Ross v. State, 386 So.2d 1191, 1197 (Fla. 1980).
Moreover, we reject Rogers' argument that his death sentence violates the eighth and fourteenth amendments because the jury issued no finding that he was the triggerman or was present at the murder. By finding Rogers guilty of first-degree murder, the jury decided he was present at and had committed the murder. A special verdict to this effect was unnecessary. Rogers' reliance on Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), is misplaced. Enmund established only that certain accomplices not physically present at the scene of the murder cannot be held accountable under the felony-murder rule.
The thirteenth issue on appeal, Rogers' challenge to Florida's capital sentencing statute, section 921.141, Florida Statutes (1985), must be rejected. See Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).
We affirm.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH and SHAW, JJ., and ADKINS, J. (Ret.), concur.
NOTES
[*] Rogers contended at trial that he merely rented the car for McDermid. He, his wife, and other family members, testified that on the night of the murder, Rogers attended a cookout with family members and a couple named John and Laura Norwood. The Norwoods had allegedly disappeared by the time of trial and did not testify. Since at least two eyewitnesses positively identified Rogers as a participant in the attempted robbery, the jury's rejection of Rogers' alibi was properly within the discretion of the fact finder.