545 So.2d 853 (1989)
Arthur D. RUTHERFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 69825.
Supreme Court of Florida.
June 15, 1989.
Rehearing Denied July 26, 1989.
*854 Michael E. Allen, Public Defender, and William C. McLain, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Helen P. Nelson and Gary L. Printy, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Arthur D. Rutherford appeals from a death sentence imposed after a jury found him guilty of first-degree murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Rutherford was indicted in the 1985 murder and armed robbery of sixty-three-year-old Stella Salamon, whose body was found in the bathtub of her home in Milton, Florida. In January 1986, a jury in Santa Rosa County found him guilty as charged and recommended a death sentence by an eight-to-four vote. However, the trial court declared a mistrial due to a discovery violation by the state. Upon retrial in December 1986 in Okaloosa County, the prosecution introduced the following pertinent evidence.
The medical examiner testified that Mrs. Salamon's left arm was broken at the elbow and the upper part of the arm was bruised, that there were bruises on her face and cuts on her lip, and that there were three severe wounds on her head. Two of these injuries were consistent with having been made by a blunt instrument or by her head being struck against a flat surface; another was a puncture wound; and all were associated with skull fracture. Cause of death was by drowning or asphyxiation, evidence of both being present.
Two women testified that Rutherford had asked them to help him cash a $2,000 check, on which he had forged Mrs. Salamon's signature. Two other witnesses testified that before Mrs. Salamon's death *855 Rutherford had told them that he planned to get some money from a woman by forcing her to write him a check. He said he would then kill her by hitting her in the head and drowning her in the bathtub to make her death look accidental. One witness quoted him as saying, "I can't do the time, but I'm damn sure gonna do the crime." Another witness testified that on the day of the murder Rutherford indicated he might kill Mrs. Salamon, and yet another witness said Rutherford told him later that day that he had killed "the old lady" by hitting her in the head with a hammer, and then had put her in the bathtub. Law enforcement officers testified that Rutherford's fingerprints and palm prints were found in the bathroom of Mrs. Salamon's home.
The jury recommended death by a seven-to-five vote, and the judge imposed the death penalty. He found four aggravating factors: the killing was especially heinous, atrocious, and cruel; the killing was cold, calculated, and premeditated; it was committed during the course of a robbery; and it was committed for pecuniary gain. Finding that the latter two factors should be considered only as one, he concluded there were three aggravating circumstances. In mitigation, he found only that Rutherford had no significant history of criminal activity.
Rutherford raises only one issue regarding the guilt phase. He claims the second trial violated his constitutional rights by placing him in double jeopardy. In the first trial, the state elicited testimony from Sherman Pittman and Kenneth Cook to the effect that Rutherford had told them in advance of the killing that he planned to murder an elderly woman for her money. Despite a demand from the defense which would have called for advising counsel of these statements, the state had not provided them during discovery. Ultimately, the judge held a Richardson hearing[1] and found that the prosecution had committed a willful discovery violation. This ruling formed the basis for granting the defendant's motion for mistrial.[2]
The general rule is that when a mistrial is declared upon the defendant's motion or with his consent or because of a manifest, urgent, or absolute necessity, jeopardy does not attach and the defendant may be retried. McLendon v. State, 74 So.2d 656 (Fla. 1954); State ex rel. Larkins v. Lewis, 54 So.2d 199 (Fla. 1951). An exception occurs when the prosecution goads the defense into moving for a mistrial and gains an advantage from the retrial. Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Rutherford contends that the prosecutor's deliberate discovery violation falls into this category. We disagree.
The record of the first trial shows that the prosecutor learned the nature of Pittman's and Cook's testimony only the day before they testified, though they had been on the state's witness list from the beginning of the discovery process. He argued that defense counsel's failure to depose the witnesses relieved the state of its obligation to disclose the nature of the statements they had made to police. While the prosecutor misapprehended his objection, there is no indication that his motive was to obtain a mistrial. The objective of seeking to cause the other party to move for a mistrial is to "save" a losing case. Our review of the record in the first case convinces us the prosecutor's motive was to introduce evidence that tended to convict Rutherford, not to create error that would force a new trial. As there was no goading the defense into moving for a mistrial, the Oregon v. Kennedy exception does not apply and it was not error to try Rutherford a second time.
Rutherford next argues that the sentencing order demonstrates that the trial *856 court improperly considered Rutherford's lack of remorse in making the finding of heinous, atrocious, and cruel. The order stated:
(h) The Court finds that this crime was especially heinous, atrocious and cruel. The evidence in this case showed that the victim had a dislocated arm, leading the Court to the conclusion that the defendant dislocated the victim's arm in the course of the robbery. Additionally, the victim had a number of gashes on her head where she had obviously had her head struck by an object or had her head bashed against an object causing severe injuries to the victim. Additionally, the victim was placed in the bathtub where she was submerged under water. Her death was attributed to asphyxiation, but the pathologist could not rule out the effects of the blows as a cause of death.
While the Court cannot use the attitude of the defendant and his lack of remorse as an aggravating circumstance, the Court does find that the defendant's lack of remorse adds weight to the Court's determination that the crime was especially heinous, atrocious and cruel. Sireci v. State, 399 So.2d 964 (Fla. 1981).
The case of Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982), was subsequently overruled in Pope v. State, 441 So.2d 1073 (Fla. 1983). The sentencing order makes it clear, however, that the judge knew that a defendant's lack of remorse could not be considered as an aggravating circumstance. We view the comment as a gratuitous statement which did not affect the finding already made by the judge that the crime was especially heinous, atrocious, and cruel. The evidence supports this finding.
Rutherford also argues that this case does not contain the heightened premeditation necessary to support a finding that the killing was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. We disagree. Rutherford apparently planned for weeks in advance to force Mrs. Salamon to write him a large check and then kill her in a manner that would look like an accidental drowning. Except for being able to force her to write the check, he followed his plan to the letter.
Rutherford relies on language that originated in Herring v. State, 446 So.2d 1049, 1057 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984), to the effect that this aggravating circumstance is limited to "execution or contract murders or witness-elimination murders." As we said in Herring, however, "this description is not intended to be all inclusive." Id. While we receded from Herring's outer limits in Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), we reiterate that the finding of cold, calculated, and premeditated is not limited to execution-style murders. It is appropriate, as we indicated in Rogers, when there is evidence of calculation, which we defined as consisting "of a careful plan or prearranged design." Id. at 533. Clearly, Rutherford's actions were "calculated," as we have defined the term.
Next Rutherford argues that the trial court did not consider mitigating evidence[3] and also improperly counted the aggravating and mitigating circumstances rather than weighing them. Again, we disagree. The evidence that Rutherford had served in the armed forces in Vietnam may be considered by a trial judge as a mitigating factor, but need not be. The judge's order did mention the number of aggravating and mitigating factors found, but from the instruction he read to the jury it is clear that he knew this was a weighing process, not a mechanical case of addition.
Rutherford also attacks the sentencing order because of the statement that "the appropriate sentence in this case is the sentence that was recommended by the trial *857 jury by a majority of seven and by the previous mistrial jury by a majority of eight." This is much different than Huff v. State, 495 So.2d 145 (Fla. 1986), in which the sentencing judge impermissibly took judicial notice of the evidence adduced at a first trial even though some of the evidence differed in the retrial. Despite the reference to the recommendation of the previous jury, we are convinced that the judge's sentence was predicated solely upon the evidence introduced in the present trial.
The last penalty-phase issue[4] involves testimony from three witnesses to the effect that the victim was afraid of the defendant. The judge used this evidence to buttress his finding of cold, calculated, and premeditated. Without addressing the question of whether upon the facts of this case the victim's state of mind could have been relevant to this aggravating factor, there was no objection to these comments at trial. Indeed, one of them was elicited by defense counsel on cross-examination; thus the issue was waived.
Finally, Rutherford attacks the thirty-year sentence imposed for the armedrobbery conviction. Initially, the court did not prepare a sentencing guidelines scoresheet. We relinquished jurisdiction so that the proper procedure could be followed. The judge imposed the same sentence, using as his sole reason for departure from the presumptive sentence of three and one-half to four and one-half years the fact that the murder "was not scored in the guidelines and is not a component of armed robbery... ." This is a valid reason to depart from the guidelines. Hansbrough v. State, 509 So.2d 1081 (Fla. 1987).
Finding no error in the record requiring reversal, we affirm the judgment of guilt and the sentence of death.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs with conviction, but dissents from the sentence.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] Though defense counsel did learn from the deposition of a deputy sheriff that one of the witnesses had told law enforcement of Rutherford's statement, the prosecutor represented to the court that he knew of both statements, in detail, the day before the two witnesses testified. In view of the state's continuing duty to disclose material demanded by the defense, it was error for the prosecutor not to tell defense counsel what he knew.
[3] The mitigating evidence consisted of testimony from Rutherford's friends and family members about his background and his nonviolent nature and from Rutherford himself about his experiences as a Marine infantryman in Vietnam. He did not make a claim of posttraumatic stress disorder.
[4] We reject without discussion Rutherford's claim that he should not have been placed in restraints before closing arguments in the penalty phase because of his threatening conduct, and a claim based on Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).