774 So.2d 637 (2000)
Arthur Dennis RUTHERFORD, Petitioner,
v.
Michael W. MOORE, Respondent.
No. SC99-150.
Supreme Court of Florida.
October 12, 2000.
Rehearing Denied December 21, 2000.
*641 Gregory C. Smith, Capital Collateral Counsel, C. Andrew Thomas, Chief Assistant, Capital Collateral Counsel and Linda McDermott, Assistant Capital Collateral Counsel, Northern Region, Tallahassee, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Richard B. Martell, Chief, Capital Appeals and Barbara J. Yates, Assistant Attorney General, Tallahassee, Florida, for Respondent.
PER CURIAM.
Arthur Dennis Rutherford, a prisoner under sentence of death, petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. For the reasons that follow, we deny habeas relief.

BACKGROUND
Rutherford was convicted and sentenced to death for the 1985 murder and armed robbery of sixty-three-year-old Stella Salamon, whose body was found in the bathtub of her home. After the first jury convicted Rutherford and recommended a sentence of death by a vote of eight to four, the trial court declared a mistrial due to a discovery violation by the State. We have previously summarized the evidence presented during the retrial as follows:
The medical examiner testified that Mrs. Salamon's left arm was broken at the elbow and the upper part of the arm was bruised, that there were bruises on her face and cuts on her lip, and that there were three severe wounds on her head. Two of these injuries were consistent with having been made by a blunt instrument or by her head being struck against a flat surface; another was a puncture wound; and all were associated with skull fracture. Cause of death was by drowning or asphyxiation, evidence of both being present.
Two women testified that Rutherford had asked them to help him cash a $2,000 check, on which he had forged Mrs. Salamon's signature. Two other witnesses testified that before Mrs. Salamon's death Rutherford had told them that he planned to get some money from a woman by forcing her to write him a check. He said he would then kill her by hitting her in the head and drowning her in the bathtub to make her death look accidental. One witness quoted him as saying, "I can't do the time, but I'm damn sure gonna do the crime." Another witness testified that on the day of the murder Rutherford indicated he might kill Mrs. Salamon, and yet another witness said Rutherford told him later that day that he had killed "the old lady" by hitting her in the head with a hammer, and then had put her in the bathtub. Law enforcement officers testified that Rutherford's fingerprints and palm prints were found in the bathroom of Mrs. Salamon's home.
Rutherford v. State, 545 So.2d 853, 854-55 (Fla.), cert. denied, 493 U.S. 945, 110 S.Ct. 353, 107 L.Ed.2d 341 (1989) (Rutherford I).
The jury found Rutherford guilty as charged. During the penalty phase, the State presented additional evidence including "the testimony of two witnesses that, *642 on the day before her murder, the victim told them that she was fearful of Rutherford and wished he would stop coming by her house." Rutherford v. State, 727 So.2d 216, 217-18 (Fla.1998) (Rutherford II). In mitigation, defense counsel
presented lay character testimony from Rutherford's family and a friend regarding his positive character traits such as being a good father, a hard worker, loyal, respectful, nonviolent, honest and generous. Testimony was also presented regarding Rutherford's meager upbringing, and the fact that his involvement in Vietnam had changed him in that he had become jittery and nervous, had nightmares, and experienced night sweats. Rutherford testified on his own behalf in the penalty phase that he did not commit the murder in question. He also testified regarding his military service, including his horrifying experiences in Vietnam and his numerous military commendations.
Id. at 218.
The jury recommended a sentence of death by a vote of seven to five. See Rutherford I, 545 So.2d at 855. The judge imposed the death penalty, finding three aggravating circumstances to be applicable: (1) the murder was especially heinous, atrocious, and cruel (HAC); (2) the murder was cold, calculated, and premeditated (CCP); and (3) Rutherford committed the murder during the course of a robbery and committed the murder for pecuniary gain (merged). See id. In mitigation, the court found only that Rutherford had no significant history of criminal activity. See id.
On appeal, this Court affirmed Rutherford's convictions and sentences.[1]See id. at 857. Rutherford then filed a motion for postconviction relief in the trial court pursuant to Florida Rule of Criminal Procedure 3.850, challenging his conviction and death sentence on fifteen grounds.[2] The trial court summarily denied all of Rutherford's claims except those alleging ineffectiveness of trial counsel. See Rutherford II, 727 So.2d at 218. After holding an evidentiary hearing on his ineffectiveness claims, the trial court also denied relief on these claims. See id. This Court affirmed *643 the denial of postconviction relief.[3]
In the present habeas petition, Rutherford raises eleven claims of ineffectiveness of appellate counsel.

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
Habeas petitions are the proper vehicle to advance claims of ineffective assistance of appellate counsel. See Thompson v. State, 759 So.2d 650, 660 (Fla.2000); Teffeteller v. Dugger, 734 So.2d 1009, 1026 (Fla.1999). However, claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been raised on direct appeal or in a postconviction motion. See, e.g., Thompson, 759 So.2d at 657 n. 6; Hardwick v. Dugger, 648 So.2d 100, 106 (Fla.1994); Breedlove v. Singletary, 595 So.2d 8, 10 (Fla. 1992).
When analyzing the merits of the claim, "[t]he criteria for proving ineffective assistance of appellate counsel parallel the Strickland[[4]] standard for ineffective trial counsel." Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985). Thus, this Court's ability to grant habeas relief on the basis of appellate counsel's ineffectiveness is limited to those situations where the petitioner establishes first, that appellate counsel's performance was deficient because "the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance" and second, that the petitioner was prejudiced because appellate counsel's deficiency "compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Thompson, 759 So.2d at 660 (emphasis supplied) (quoting Groover v. Singletary, 656 So.2d 424, 425 (Fla. 1995)); see, e.g., Teffeteller, 734 So.2d at 1027. If a legal issue "would in all probability have been found to be without merit" had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective. Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994); see, e.g., Kokal v. Dugger, 718 So.2d 138, 142 (Fla.1998); Groover, 656 So.2d at 425. This is generally true as to issues that would have been found to be procedurally barred had they been raised on direct appeal. See, e.g., Groover, 656 So.2d at 425; Medina v. Dugger, 586 So.2d 317, 318 (Fla.1991).
With these principles in mind, we turn to Rutherford's claims that his appellate counsel was constitutionally ineffective. In his first, ninth, and tenth claims, Rutherford asserts that counsel was ineffective for failing to raise on appeal the denial of numerous pretrial motions and the use of various jury instructions. However, counsel was not ineffective for failing to raise on appeal the denial of the pretrial motions because many of the underlying substantive claims are without merit. For example, the Court has previously rejected claims that electrocution is cruel and unusual punishment,[5] challenges to the constitutionality of section 921.141, Florida *644 Statutes (1999),[6] and claims that section 782.04(1), Florida Statutes (1999), the felony-murder statute, is unconstitutional.[7] Likewise, Rutherford's claims regarding the trial court's failure to properly instruct the jury are without merit. This Court has previously rejected similar claims that the standard jury instructions improperly shift the burden to the defendant to prove that death is inappropriate,[8] that the trial court should have instructed the jury not to consider nonstatutory aggravating circumstances,[9] and that the trial court should have instructed the jury to merge its consideration of the aggravating circumstances that the murder was committed during the course of a robbery and committed for pecuniary gain.[10] The failure to raise meritless claims does not render appellate counsel's performance ineffective. See, e.g., Kokal, 718 So.2d at 142; Williamson, 651 So.2d at 86; Groover, 656 So.2d at 425.
Rutherford also claims that appellate counsel should have raised the trial court's failure to give the jury instructions that: (1) the death penalty is only intended for the most aggravated and least mitigated of crimes; and (2) jurors should not use a counting process in determining whether aggravating circumstances outweigh the mitigating circumstances. However, Rutherford cites no cases establishing that the failure to give these instructions constitutes reversible error, and we find that Rutherford has established neither deficiency nor prejudice with regard to the failure to raise these issues on appeal.
In addition, Rutherford asserts that appellate counsel was ineffective for failing to argue on appeal that the jury instructions for the HAC and CCP aggravating circumstances were unconstitutionally vague. Trial counsel objected to the applicability of the HAC instruction, but did not specifically object on the basis that the instruction was unconstitutionally vague. Although trial counsel did file a pretrial motion on the basis that the CCP instruction was unconstitutionally vague, counsel did not renew the objection in the sentencing hearing or submit an alternative instruction. Therefore, these claims were not preserved for appellate review. See Espinosa v. State, 626 So.2d 165, 167 (Fla.1993); see also Downs, 740 So.2d at 517. Additionally, the trial court gave the standard jury instructions, and at the time of Rutherford's direct appeal in 1989, the United States Supreme Court had not yet decided Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). As the Court stated in Downs, "appellate counsel is not ineffective for failing to raise a claim that would have been rejected on appeal .... because the trial court used the approved standard jury instructions, the error had not been preserved in the court below, and Espinosa had not yet been decided." Downs, 740 So.2d at 518 n. 18; see Thompson, 759 So.2d at 667; see also Darden v. State, 475 So.2d 214, 216-17 (Fla.1985) (finding appellate counsel's performance was not deficient for failing to anticipate a change in the law).
*645 Finally, Rutherford claims that appellate counsel was ineffective for failing to raise on appeal the trial court's denial of his motion to conduct individual voir dire. The trial judge did not conduct individual voir dire, but instead asked the venire collectively if they knew the defendant, the victim, anything about the case, or had read anything about the case in the newspapers. The assistant state attorney also asked the venire collectively whether they knew anything about the case or knew any of the potential witnesses. No juror responded that he or she knew anything about the case or any of the people involved in the case.
This Court has explained that the "trial court has broad discretion in deciding whether prospective jurors must be questioned individually about publicity the case may have received." Teffeteller, 734 So.2d at 1028. In Teffeteller, this Court rejected a similar claim of ineffective assistance of appellate counsel where "even though there was no individual, sequestered voir dire the judge did question the venire members individually about their knowledge of the case and ability to disregard any prior information and render an impartial verdict based solely on the evidence at the resentencing proceeding." 734 So.2d at 1029. In this case, although the jurors were not questioned individually, the trial court did ask them collectively whether they had any knowledge of the case. We therefore conclude that Rutherford has not demonstrated that he was prejudiced by the failure of his appellate counsel to raise this claim during his direct appeal.
In his second and eighth claims, Rutherford asserts that his appellate counsel was ineffective for not convincing the Court to rule in his favor on two issues actually raised on direct appeal: (1) that his prosecution violated double jeopardy because the State goaded the defense into moving for a mistrial; and (2) that Rutherford should not have been shackled before closing arguments began during the penalty phase. When analyzing claims that appellate counsel was ineffective for failing to raise additional arguments in support of a claim raised on direct appeal, we have previously observed that
"petitioner's contention that [the point] was inadequately argued merely expresses dissatisfaction with the outcome of the argument in that it did not achieve a favorable result for petitioner." We therefore decline petitioner's invitation to utilize the writ of habeas as a vehicle for the re-argument of issues which have been raised and ruled on by this Court.
Routly v. Wainwright, 502 So.2d 901, 903 (Fla.1987) (quoting Steinhorst v. Wainwright, 477 So.2d 537, 540 (Fla.1985)); see also Grossman v. Dugger, 708 So.2d 249, 252 (Fla.1997) (finding claim that appellate counsel was ineffective for failing to make arguments "more convincingly" to be procedurally barred in a habeas petition). Under these precedents, if an issue was actually raised on direct appeal, the Court will not consider a claim that appellate counsel was ineffective for failing to raise additional arguments in support of the claim on appeal.
With regard to his double jeopardy claim, we found on direct appeal that the retrial in this case did not violate double jeopardy principles because
the prosecutor's motive was to introduce evidence that tended to convict Rutherford, not to create error that would force a new trial. As there was no goading the defense into moving for a mistrial, the Oregon v. Kennedy, [456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982),] exception does not apply and it was not error to try Rutherford a second time.
Rutherford I, 545 So.2d at 855. In his habeas petition, Rutherford faults his appellate counsel for failing to discover and present "objective evidence" that he claims would have shown the State engaged in a pattern of provoking mistrials in order to *646 shop for a more favorable judge and jury. However, none of the evidence Rutherford now relies upon was in the appellate record. In fact, Rutherford's current counsel admits that they only recently became aware of the "objective evidence" that would have allegedly substantiated this claim. Appellate counsel cannot be deemed ineffective for failing to investigate and present facts in order to support an issue on appeal. The appellate record is limited to the record presented to the trial court. Cf. Finney v. State, 660 So.2d 674, 684 (Fla.1995) ("Without a proffer it is impossible for the appellate court to determine whether the trial court's ruling was erroneous and if erroneous what effect the error may have had on the result."). Therefore, we conclude that Rutherford has not demonstrated that his appellate counsel was deficient with respect to his performance as to issues that were actually raised on direct appeal.
In his third claim, Rutherford contends that his appellate counsel was ineffective for failing to assert on appeal that fundamental error occurred when two allegedly incompetent witnesses, Mary Heaton and Elizabeth Ward, testified. Trial counsel did not object to the testimony of either Heaton or Ward on this basis. However, counsel did cross-examine Heaton regarding the fact that she had previously been in a mental institution, had a nervous breakdown, had difficulty remembering things, and had difficulty distinguishing fact from fiction.
We have "repeatedly held that appellate counsel cannot be considered ineffective for failing to raise issues which [were] procedurally barred ... because they were not properly raised at trial." Williamson, 651 So.2d at 86-87; see, e.g., Groover, 656 So.2d at 425; Medina, 586 So.2d at 318. Because this issue was not preserved for review, if it had been raised on appeal, it would have warranted reversal only if it constituted fundamental error, which has been defined as an error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Urbin v. State, 714 So.2d 411, 418 n. 8 (1998) (quoting Kilgore v. State, 688 So.2d 895, 898 (Fla.1996)); see also Chandler v. State, 702 So.2d 186, 191 n. 5 (Fla.1997) (describing "fundamental error" as error "so prejudicial as to vitiate the entire trial"), cert. denied, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998).
A witness is incompetent to testify if the trial court determines the witness is (1) unable to communicate to the jury; (2) unable to understand the duty to tell the truth; or (3) unable to perceive and remember the events. See §§ 90.603, .604, Fla. Stat. (1999). However, "[a] witness is presumed competent to testify until the contrary is established." Hawk v. State, 718 So.2d 159, 162 (Fla.1998); see generally § 90.601, Fla. Stat. (1999). Rutherford cites no case in support of his argument that the failure of the trial court to examine witnesses' competency on the court's own motion constitutes fundamental error that would have resulted in a reversal had appellate counsel raised this issue on direct appeal. Therefore, we deny relief on this claim.
Rutherford claims in his fourth point that appellate counsel was ineffective for failing to raise on appeal the improper admission of gruesome photographs, an issue that was preserved for appellate review. We have explained that "the admission of photographic evidence is within the trial judge's discretion and a trial judge's ruling on this issue will not be disturbed on appeal unless there is a clear showing of abuse." Pangburn v. State, 661 So.2d 1182, 1187 (Fla.1995); Wilson v. State, 436 So.2d 908, 910 (Fla.1983). Photographs are admissible if they are "relevant and not so shocking in nature as to defeat the value of their relevance." Czubak v. State, 570 So.2d 925, 928 (Fla.1990); see Zakrzewski v. State, 717 So.2d 488, 494 (Fla. 1998), cert. denied, 525 U.S. 1126, 119 S.Ct. *647 911, 142 L.Ed.2d 909 (1999). This Court has upheld the admission of photographs where they are relevant to "explain a medical examiner's testimony, to show the manner of death, the location of wounds, and the identity of the victim." Larkins v. State, 655 So.2d 95, 98 (Fla.1995).
In this case, two photographs were admitted during the guilt phase showing the victim at the crime scene. Rutherford now challenges the additional three photographs of the victim taken at the morgue that were introduced during the penalty phase. The trial court did not abuse its discretion in allowing these photographs to be admitted into evidence because they were relevant to show the circumstances of the crime and the nature and extent of the victim's injuries. See id. Further, the trial court only admitted a total of five photographs of the victim in this case. See Wilson, 436 So.2d at 910 (finding no abuse of discretion in admitting nine autopsy photographs). Even where we have found error in the admission of gory autopsy photographs that were not relevant to any disputed issue, the error can be considered harmless if the photographs played a minor role in the trial. See Almeida v. State, 748 So.2d 922, 929-30 (Fla.1999), cert. denied, 528 U.S. 1181, 120 S.Ct. 1221, 145 L.Ed.2d 1120 (2000). Rutherford has not demonstrated that any deficiency in appellate counsel's performance "compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Groover, 656 So.2d at 425. Therefore, this claim does not form a basis for habeas relief.
In his fifth point, Rutherford asserts that fundamental error occurred when he was involuntarily absent from the penalty phase charge conference and his counsel was ineffective for failing to raise this issue on appeal. To the extent that Rutherford attempts to raise the substantive issue that his right to be present was violated, this claim is procedurally barred. See, e.g., Hardwick, 648 So.2d at 105. This claim would not have constituted error, much less fundamental error. A defendant has "a constitutional right to be present at all crucial stages of his trial where his absence might frustrate the fairness of the proceedings." Garcia v. State, 492 So.2d 360, 363 (Fla.1986); see Cole v. State, 701 So.2d 845, 850 (Fla.1997), cert. denied, 523 U.S. 1051, 118 S.Ct. 1370, 140 L.Ed.2d 519 (1998). The constitutional right to be present does not extend to bench conferences involving purely legal matters because the defendant's presence would be of no assistance to counsel. See Cole, 701 So.2d at 850. Similarly, because the trial judge and attorneys only discussed legal arguments at the charge conference, Rutherford's absence did not frustrate the fairness of the proceedings. See id. Appellate counsel cannot be deemed ineffective for failing to raise non-meritorious issues. See, e.g., Williamson, 651 So.2d at 86.
In claim six, Rutherford argues that appellate counsel was ineffective for failing to argue on appeal that because his trial counsel informed the trial court that Rutherford had rejected a plea deal, trial counsel was ineffective and operated under a conflict of interest. According to Rutherford, this revelation prejudiced him because the trial court used his lack of remorse as a nonstatutory aggravating circumstance. However, in Rutherford's direct appeal, this Court rejected his claim that the trial court improperly considered his lack of remorse as an aggravating circumstance. See Rutherford I, 545 So.2d at 855-56. Moreover, to the extent that Rutherford attempts to raise substantive claims that trial counsel was ineffective and that trial counsel had a conflict of interest, these issues are procedurally barred in this proceeding. See, e.g., Hardwick, 648 So.2d at 105.
The Court has previously explained that appellate counsel does not render ineffective assistance by failing to *648 raise a claim of ineffective trial counsel on direct appeal:
[I]neffective assistance of trial counsel will not be cognizable on direct appeal when the issue has not been raised before the trial court. There are rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue. Petitioner asks that we expand this exception by holding, in effect, that not only may it be raised on direct appeal but that it must be raised on direct appeal, i.e., appellate counsel is ineffective for failing to do so. We decline to do so.
Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla.1987) (citations omitted). Because trial counsel's alleged ineffectiveness was not apparent from the record, we find that appellate counsel was not constitutionally ineffective for failing to raise trial counsel's ineffectiveness on direct appeal.
We likewise find to be without merit Rutherford's claim that appellate counsel was ineffective for failing to argue on appeal that trial counsel operated under a conflict of interest. Rather than asserting a traditional conflict of interest claim, such as that trial counsel represented a codefendant, Rutherford contends that counsel put his own interests before his client when he revealed the plea offer, thus creating a conflict of interest. In order for this argument to have succeeded on direct appeal, appellate counsel would have had to establish "that an actual conflict of interest adversely affected his lawyer's performance." Quince v. State, 732 So.2d 1059, 1065 (Fla.1999) (emphasis supplied) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). This is not a case where trial counsel "actively represented conflicting interests." Id. (quoting Cuyler, 446 U.S. at 350, 100 S.Ct. 1708). Appellate counsel will not be deemed ineffective for failing to raise meritless issues. See, e.g., Kokal, 718 So.2d at 142.
In his seventh issue, Rutherford asserts that appellate counsel was ineffective for failing to argue on appeal that the trial court should have granted the jury's request to have the testimony of Rutherford and Johnny Perritt, Jr., read back to them during deliberations. The judge instructed the jurors to use their collective recollections regarding the testimony. First, this issue was not preserved for review and "appellate counsel cannot be considered ineffective for failing to raise issues which [were] procedurally barred ... because they were not properly raised at trial." Williamson, 651 So.2d at 86-87; see, e.g., Groover, 656 So.2d at 425; Medina, 586 So.2d at 318. Second, Rutherford has not demonstrated prejudice because this would not have constituted fundamental, reversible error had it been raised on appeal. The trial court has broad discretion in determining whether to read back testimony to jurors and Rutherford has not shown fundamental error occurred here. See State v. Riechmann, 25 Fla. L. Weekly S163, S170, 25 Fla. L. Weekly S242, ___ So.2d ___, 2000 WL 205094 (Fla. Feb. 24, 2000).
Finally, in his eleventh claim, Rutherford argues that his appellate counsel was ineffective for not arguing on appeal that error occurred when the trial court failed to properly state reasons for imposing the death penalty during the sentencing hearing and then failed to file the written sentencing order for eight days. In Rutherford II, this Court affirmed the trial court's finding that this substantive claim was procedurally barred in his 3.850 motion because it could have been raised on direct appeal, even though couched in terms of ineffective assistance of trial counsel. 727 So.2d at 218-19 n. 2. We now reject Rutherford's current claim that appellate counsel was ineffective for failing to raise this issue on direct appeal because the underlying issue is without merit.
*649 In Van Royal v. State, 497 So.2d 625, 628 (Fla.1986), this Court vacated a death penalty sentence because the trial court overrode the jury's life recommendation without making any oral findings at the sentencing hearing and then did not file a written sentencing order for six months, which was after the record on appeal had been certified to this Court. We stated that as long as sentencing orders are filed "on a timely basis before the trial court loses jurisdiction, we see no problem." Id. Then, in Muehleman v. State, 503 So.2d 310, 317 (Fla.1987), we declined to vacate a death sentence on the grounds that the sentencing order had been filed two-and-one-half months after the oral pronouncement of sentence, but prior to the record being certified to this Court.
In a subsequent case decided after the direct appeal in Rutherford I, the Court established a prospective procedural rule "that all written orders imposing a death sentence be prepared prior to the oral pronouncement of sentence for filing concurrent with the pronouncement." Grossman v. State, 525 So.2d 833, 841 (Fla. 1988). However, this Court has previously rejected arguments that Grossman applied retrospectively to cases in which the penalty phase occurred before the decision in Grossman. See Holton v. State, 573 So.2d 284, 291 (Fla.1990) (finding no error where sentencing order was filed two months after the oral pronouncement and six days after the record was certified). In this case, the written sentencing order was filed only eight days after the sentencing order and Rutherford does not challenge the sufficiency of the written findings. This short lapse would not have constituted error under Van Royal, Muehleman, and Holton. Appellate counsel cannot be considered ineffective for failing to raise issues on appeal that would have been found to be meritless. See, e.g., Kokal, 718 So.2d at 142; Williamson, 651 So.2d at 86.
For the reasons expressed in this opinion, we deny habeas relief.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] The Court found the following claims raised on direct appeal to be without merit: (1) the second trial violated Rutherford's constitutional rights by placing him in double jeopardy; (2) the trial court improperly considered Rutherford's lack of remorse in finding the HAC circumstance to be applicable; (3) the State did not establish the heightened premeditation necessary to support the CCP aggravating circumstance; (4) the trial court failed to consider mitigating evidence present in the record; (5) the trial judge impermissibly considered the recommendation of death by the previous jury; (6) the trial court improperly allowed three witnesses to testify that the victim was afraid of the defendant; (7) Rutherford should not have been placed in restraints before closing arguments during the penalty phase; and (8) a claim based on Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). See Rutherford I, 545 So.2d at 855-57 & n. 4.
[2] Rutherford raised the following claims in his 3.850 petition:

(1) ineffective assistance of counsel (IAC) at the guilt phase for failing to investigate, prepare, and perform sufficiently; (2) IAC at the penalty phase for failing to investigate, develop, and present substantial mitigation; (3) IAC at the penalty phase for failing to object to hearsay testimony regarding the victim's fear of Rutherford; (4) improper penalty-phase jury instructions that shifted the burden of proof to Rutherford; (5) improper penalty-phase jury instructions regarding aggravating circumstances; (6) inapplicability of CCP; (7) improper penalty-phase jury instruction on HAC; (8) untimely imposition of written death sentence; (9) trial court's refusal to find mitigators established by the record; (10) IAC at penalty phase for conflict of interest in revealing confidences and secrets to the trial court; (11) admission of inflammatory photographs; (12) improper introduction of nonstatutory aggravators at the penalty phase; (13) IAC at the penalty phase for failing to obtain mental-health expert; (14) improper robbery sentence without benefit of scoresheet; and (15) double jeopardy bar to retrial.
Rutherford II, 727 So.2d at 218 n. 1.
[3] Rutherford raised six issues in his 3.850 appeal: (1) ineffectiveness during the penalty phase for failing to object to the hearsay testimony regarding the victim's fear of Rutherford; (2) ineffectiveness for failing to obtain a mental health expert to offer mitigation evidence during the penalty phase; (3) ineffectiveness for failing to develop mitigating evidence; (4) the trial court erred in summarily denying Rutherford's double jeopardy claim as procedurally barred; (5) trial counsel was ineffective during the guilt phase for failing to investigate, prepare, and perform; (6) the trial court erred in summarily denying several of Rutherford's claims. See Rutherford II, 727 So.2d at 218. This Court found issues four and six to be procedurally barred and found no basis to reverse the trial court on the remaining claims. See id. at 218-26 & n. 2.
[4] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[5] See Provenzano v. Moore, 744 So.2d 413, 415 (Fla.1999), cert. denied, 528 U.S. 1182, 120 S.Ct. 1222, 145 L.Ed.2d 1122 (2000).
[6] See, e.g., Elledge v. State, 706 So.2d 1340, 1347 n. 9 (Fla.1997), cert. denied, 525 U.S. 944, 119 S.Ct. 366, 142 L.Ed.2d 303 (1998); Foster v. State, 679 So.2d 747, 751-52 nn. 4-5 (Fla.1996).
[7] See Blanco v. State, 706 So.2d 7, 11 (Fla. 1997), cert. denied, 525 U.S. 837, 119 S.Ct. 96, 142 L.Ed.2d 76 (1998).
[8] See, e.g., Downs v. State, 740 So.2d 506, 517 n. 5 (Fla.1999); Demps v. Dugger, 714 So.2d 365, 368 & n. 8 (Fla.1998).
[9] See Walker v. State, 707 So.2d 300, 316-17 (Fla.1997).
[10] See Thompson, 759 So.2d at 666 (finding appellate counsel was not ineffective for failing to assert that the jury should have been instructed to merge its consideration of aggravating circumstances where trial court did not improperly double the aggravating circumstances); Armstrong v. State, 642 So.2d 730, 738-39 (Fla.1994) (finding error in failing to instruct the jury not to consider the same facts in support of different aggravating factors to be harmless).