961 So.2d 239 (2007)
James BELCHER, Appellant,
v.
STATE of Florida, Appellee.
James Belcher, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC05-1732, SC06-866.
Supreme Court of Florida.
June 14, 2007.
*243 Christopher J. Anderson, Atlantic Beach, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
James Belcher appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the circuit court's order denying postconviction relief and deny Belcher's habeas petition.

FACTS AND PROCEDURAL HISTORY
The facts of this crime are set forth in our opinion from Belcher's direct appeal, Belcher v. State, 851 So.2d 678 (Fla.2003). For the purposes of these proceedings, we note that Belcher was convicted of first-degree murder on two theories: premeditation and felony murder. Id. at 681. He was also found guilty of sexual battery. Id. The jury recommended the death penalty by a vote of nine to three. Id. Belcher was sentenced to death for the murder conviction and sentenced to twenty-five years in prison for the sexual battery conviction. Id. In sentencing Belcher to death, the trial court found three statutory aggravators[1] and fifteen nonstatutory mitigators.[2]Id. at 681-82.
*244 Belcher raised four arguments on direct appeal: that the trial court erred in not granting a mistrial based on improper prosecutorial comments during the closing argument, that there was insufficient evidence to support the heinous, atrocious, and cruel (HAC) aggravator, that the trial court erred when it denied his request to read a special instruction to the jury listing the nonstatutory mitigators presented, and finally that Florida's death penalty scheme is unconstitutional. Id. at 682-85. This Court also addressed whether there was sufficient evidence to support Belcher's conviction for first-degree murder and the proportionality of the death sentence in his case. Id. at 682, 685-86. This Court affirmed Belcher's convictions for first-degree murder and sexual battery and his death sentence. Id. at 679. The United States Supreme Court denied certiorari on December 1, 2003. Belcher v. Florida, 540 U.S. 1054, 124 S.Ct. 816, 157 L.Ed.2d 706 (2003).
Belcher filed his motion for postconviction relief in November of 2004, raising fourteen claims for relief;[3] eleven of the *245 fourteen claims alleged the ineffective assistance of trial counsel, Alan Chipperfield and Lewis Buzzell. Following a Huff[4] hearing on January 24, 2005, the trial court determined that an evidentiary hearing was necessary on nine of the claims;[5] the evidentiary hearing was conducted on April 27, 2005, and May 6, 2005. At the evidentiary hearing, Belcher abandoned his Brady[6] claim. The trial court issued its order denying defendant's motion for postconviction relief on August 25, 2005, and this appeal follows.

POSTCONVICTION CLAIMS

1. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
All of Belcher's postconviction claims raised before this Court assert that he received ineffective assistance of trial counsel. Based upon the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted).
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
*246 There is a strong presumption that trial counsel's performance was not ineffective. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting. effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. 2052. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). "Judicial scrutiny of counsel's performance must be highly deferential." Id. In Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000), this Court held that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." We have also explained that where this Court has previously rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to advance the same claim in the trial court. Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992).

A. Failure to Object to Prosecutorial Misconduct
First, Belcher argues that trial counsel was ineffective for failing to object to six separate instances of alleged improper prosecutorial conduct. We address initially those claims that merited an evidentiary hearing before the court below. Belcher claims that trial counsel should have objected to the following statement by the prosecutor, Mr. De La Rionda, during voir dire questioning of the panel of prospective jurors:
Mr. De La Rionda: Do all of you understand that as we sit here today the defendant, Mr. Belcher, is presumed to be innocent? Do all of you understand that?
(Affirmative response from prospective jurors)
Mr. De La Rionda: Okay. Do you understand that does not mean he is innocent? It means he is presumed to be innocent until you hear the evidence to the contrary? Can all of you agree with that?
(Affirmative response from prospective jurors)
When asked why they did not object, both attorneys testified at the evidentiary hearing below that they did not find the above statements objectionable. The lower court dismissed this claim, finding that defense counsel's testimony was both more credible and more persuasive than Belcher's allegations. The court also concluded that the statement complained of was a correct statement of the law, and thus Belcher could not establish ineffective assistance on the part of counsel for failing to object.
We find that Belcher has not demonstrated error in the trial court's decision to deny relief on this claim. First, inasmuch as Belcher claims that the prosecutor told the potential jurors that the State could overcome its burden by introducing any evidence at all, this is refuted by the record. The transcripts indicate that the prosecutor was merely explaining the presumption of innocence to prospective jurors. In addition, as the lower court concluded, we do not see a proper basis for defense counsel to object. Finally, Belcher cannot establish any prejudice. He admits in his brief, and the trial transcripts confirm, that the jury was correctly instructed on both the presumption of innocence and the reasonable doubt standard of proof by the trial court. Upon *247 review, we find no fault with the lower court's conclusion that Belcher has not established ineffective assistance in this instance.
Belcher next argues that, during voir dire, the prosecutor did not inform the jury that the defense has a lesser burden of proof in establishing mitigating factors than the State has in proving the guilt or innocence of the defendant. Hence, Belcher claims that trial counsel was ineffective for not objecting to this omission in the explanation. Belcher also takes issue with a statement made by defense attorney Chipperfield during voir dire, arguing that it compounded the misstatements made by the prosecution.[7]
As above, Belcher has not shown any error with the trial court's decision to deny relief on this claim. At the evidentiary hearing below, Chipperfield testified that he could not remember why he did not object to the State's explanation of the bifurcated trial process and its failure to mention a lower burden of proof for mitigators, but he guessed it was because he did not feel that he could force the prosecutor to mention it since the prosecutor was discussing the trial procedure, not mitigation. Buzzell testified that he felt the challenged statements were being taken out of context, and furthermore that, overall, Chipperfield did a thorough job in explaining the process of establishing mitigating factors. We agree with the court below that nothing the State said was objectionable, and furthermore that Chipperfield's challenged comment was not improper. We also note that the jury in this case was properly instructed regarding the proper standard of proof necessary to establish mitigators. We affirm the trial court's decision to deny relief in this instance.
Next, Belcher takes issue with the following comments made by the prosecutor during voir dire, alleging that trial counsel was ineffective for failing to object or request a curative instruction since it indicates that a killing done instantaneously after deciding to kill is premeditated first-degree murder:
Mr. De la Rionda: The law does not fix the exact period of time that must pass between the formation in the mind of the premeditated intent to kill and the actual killing. Do all of you understand that? There doesn't have to be an exact period of time. The premeditated intent *248 to kill must be formed before the killing. And the question of premeditation is a question of fact to be determined by you from the evidence. Do all of you understand that?
. . . .
(Affirmative response from prospective jurors)
Mr. De la Rionda: You've got to formulate the intent to kill and have the intent to kill. It can be a matter of seconds, it's all what you feel based on the circumstances. Do you understand that?
(Affirmative response from prospective jurors)
Belcher also challenges the following comment from the prosecutor's closing statement, arguing that it informed the jury that the mere fact of the victim's death was in itself sufficient to prove premeditated murder:
The State is required to prove for premeditated murder the following: There's two ways, first of all, of proving murder in the first-degree. One is what's called premeditated murder and the other one is known as felony murder. And the bottom line in terms of proving beyond a reasonable doubt is that she is dead. There's no dispute about that.
At the evidentiary hearing, Chipperfield testified that he could not remember why he did not object at the time, other than he thought the prosecutor's definition of premeditation was straight out of the standard jury instruction, and furthermore he did not see any grounds for objection to the prosecutor's comment during his closing. Buzzell also testified that he felt the prosecutor's explanation was a correct statement of the law, perhaps incomplete but not incorrect.
In denying relief on this claim, the court below found that the prosecutor's statements themselves were not objectionable, and that therefore Belcher could not establish deficient performance on behalf of his trial counsel. We find no error in this conclusion. The prosecutor's comments were largely identical to the standard jury instruction on premeditation.[8] Concerning the prosecutor's comment during closing argument, the prosecutor did go on to state that premeditation requires time long enough for reflection; Belcher only selectively cites one part of the State's closing in making this claim. Finally, as with the prior claims, the trial judge read the standard jury instruction on premeditation at the close of the guilt-phase trial. Relief was properly denied on this claim.
Finally, the lower court summarily denied relief on three similar claims of ineffective assistance of counsel without an evidentiary hearing. Specifically, Belcher alleged that his trial counsel was ineffective for failing to object during the following instances of alleged prosecutorial misconduct during voir dire: (1) comments *249 minimizing the role of the jury; (2) misstating that Belcher had the burden of proving mitigating circumstances; and (3) stating that the State would not have to prove motive. As with the claims addressed above, we conclude that Belcher has not demonstrated any error in the trial court's decision to deny relief on these claims. Regarding the first two claims, we note that the jury in this case was properly instructed as to its role in recommending the death penalty and regarding the proper evaluation of aggravating circumstances versus mitigating circumstances. In addition, as the lower court also correctly noted, motive is not a required element of first-degree murder. See Norton v. State, 709 So.2d 87, 92 (Fla.1997). Upon review of these three claims, we find no fault with the lower court's conclusion that Belcher has not established ineffective assistance in these instances.

B. Statements Regarding Sexual Battery Suffered by the Victim
Belcher next cites a passage from his defense counsel's opening argument that he feels conceded that the victim suffered a sexual battery, thus making his convictions for sexual battery and for felony murder almost certain. Belcher takes issue with the following statement, alleging that it constitutes ineffective assistance:
Obviously, and quite tragically, Ms. Embry is dead. There's no dispute about that, and there's really no dispute about the things that the State went over in great detail with you about, such as she lived at home alone, that her brother found her when she didn't show up for school and work that day. Those kind of things. And so a lot of the evidence that you'll be hearing will be important for your consideration. But the evidence, that kind of evidence, will not show you what the ultimate question is.
It won't answer the ultimate question for you, which is who did it. And that's what you need to be concerned with.
In denying relief on this claim, the lower court relied on the testimony of Buzzell and Chipperfield given at the evidentiary hearing to conclude, first, that defense counsel's theory was that Belcher did not commit the crime, and also that the above statement did not specifically concede anything relevant to their defense. Accordingly, the court below concluded that Belcher was unable to establish deficient performance.
We find no error in this conclusion. It is not clear from the transcripts that defense counsel admitted anything other than the fact that victim Embry was deceased; accordingly, inasmuch as Belcher claims that his attorneys admitted that a sexual battery occurred or his guilt in such a crime or both, this argument is refuted by the record. In addition, as Buzzell testified at the evidentiary hearing, his strategy in the opening statement was to build credibility with the jury by not disputing the fact that the victim was dead; he also confirmed that he told the jury that the DNA evidence proved only that Belcher had had sex with the victim, not that he committed the sexual battery. This strategic decision to concede the victim's death in the opening statement provides no basis for an ineffectiveness claim. See Occhicone, 768 So.2d at 1048. As with the other ineffectiveness arguments, relief on this claim was properly denied.

C. Impermissible Appeals to the Jurors' Emotions and Sympathies
In his next allegation of ineffective assistance of trial counsel, Belcher argues that defense counsel failed to object to numerous statements made by the victim's brother, Ricky Embry, during the guilt phase. Belcher also argues that, although trial *250 counsel objected to a few of the photographs offered into evidence by the State, there were others that were published to the jury that constituted gruesome appeals to the jury's sympathy. Belcher also takes issue with a few statements from the prosecutor's closing argument as flagrant appeals to the emotions of the jurors. Finally, Belcher argues that trial counsel should have objected when, during the penalty phase, the prosecution got mitigation witnesses, prison inmates, to testify on cross-examination about prison life. Belcher claims that this entire line of questioning was calculated to inflame, arouse fear of prison escape, and create an overall sense of indignation in the minds of the jurors.
Again, we find that Belcher has demonstrated no error in the trial court's decision to summarily deny relief on this claim. The lower court concluded that defense counsel did, in fact, object during Ricky Embry's testimony, arguing that it constituted victim impact testimony intended to create sympathy for the victim; furthermore, trial counsel also objected to the admission of some of the photographs. The court also concluded that, given the wide latitude allowed in arguing to a jury, the comments by the prosecutor during the closing argument did not rise to the level of vitiating the entire trial. We affirm the trial court's reasoning in rejecting relief on this claim and agree that Belcher has not established ineffective assistance of counsel.

D. Failure to Call a Gynecologist
Belcher argues that defense counsel was ineffective for failing to retain its own gynecologist to stress that the comparatively minimal injuries found in the victim's vagina could have been caused by a great many things besides sexual battery. Belcher asserts that such an expert could have assisted defense counsel in better understanding and addressing the State's witness, Dr. Bonifacio Floro, the medical examiner.
This claim was addressed at the evidentiary hearing below, wherein Chipperfield testified the attorneys felt that Dr. Floro could "give them what they wanted" at the trial. Buzzell likewise testified that he and Chipperfield were satisfied with the information they were able to obtain from Dr. Floro. Postconviction counsel also called Dr. John Borderlin, a gynecologist, at the evidentiary hearing in an effort to demonstrate the kind of expert opinion that trial counsel could have presented during the guilt phase. Dr. Borderlin testified regarding the vaginal injuries sustained by the victim, agreeing that they were not consistent with "consensual normal sex," but that they could be the result of rough consensual sex. On cross-examination, however, Dr. Borderlin confirmed that he had no disputes with the testimony given by the State's expert during the guilt-phase trial, and he agreed that there was evidence of a sexual battery. He testified that it was his opinion that the sex in this case was not consensual and was against the victim's will.
We affirm the lower court's decision to deny relief on this claim as Belcher has established neither deficient performance nor prejudice. First, Belcher cannot establish deficient performance for failure to retain an expert witness when defense counsel rigorously challenged the State's own witness. This Court rejected a similar argument in Reed v. State, 875 So.2d 415 (Fla.2004), where the defendant alleged ineffective assistance of trial counsel for failing to retain a defense expert; however, we held that to be unnecessary where defense counsel cross-examined the State's experts to establish the facts necessary for the defense. Id. at 427-28. In the instant case, Belcher himself identifies in his brief the ways in which defense *251 counsel attacked Dr. Floro's testimony; for example, Dr. Floro agreed that it is possible for a woman to sustain such vaginal injuries in vigorous, consensual intercourse. Dr. Floro also admitted that the sperm swabbed from the victim's vagina could have been deposited in the victim's body over a fairly large period of time, anywhere from three to six days prior to the victim's death, up to just six hours prior to the victim's death. Thus, the record makes clear that defense counsel attempted to confront the evidence of a sexual battery not through its own expert, but by vigorously challenging the State's expert. Belcher cannot premise a postconviction claim of ineffective assistance based on a reasonable strategic decision by his trial counsel. See Occhicone, 768 So.2d at 1048.
Belcher is also unable to establish prejudice to his defense, given that the expert obtained for the postconviction proceedings came to the same conclusions as Dr. Floro, namely that the victim evidenced signs of a sexual battery. Relief on this claim was properly denied.

E. Failure to Object to the State's Presentation of Nonstatutory Aggravating Circumstances
In this claim, Belcher takes issue with the cross-examination of defense mitigation witnesses, all inmates, who were asked by the prosecution about prison conditions in an attempt to show that prisoners can play sports, watch television, work outside prison walls, and participate in other diversions. Belcher argues that trial counsel was ineffective for failing to object to this line of questioning that "glamorized" the prison lifestyle, and that this testimony functioned as a series of nonstatutory aggravating circumstances.
When asked about his failure to object at the evidentiary hearing below, Chipperfield testified that he did not object to the prosecutor's questions because he thought the line of questioning was "silly" and that the jury would see through it. He also stated that he felt he was able to get these same witnesses to describe for the jury that prison was "not a good place." Buzzell testified that he felt Chipperfield did a thorough job on redirect of attacking this line of questioning, and that he was able to get the inmates to describe how "unpleasant" prison life really was. Also, given Judge Dearing's sentencing order, which cited as mitigation Belcher's behavior in prison and the testimony of the inmates who stated that he served as a role model, Buzzell felt that presenting the inmate testimony was ultimately worthwhile.
As with the previous claims, we agree with the trial court's conclusion denying relief on this claim. The lower court found that defense counsel adequately dealt with the State's cross-examination of prisoners in the penalty phase regarding prison life, and that there was nothing objectionable about the State's cross-examination of these inmate witnesses. The court concluded that Belcher failed to establish error on the part of trial counsel or prejudice to his case. Belcher has demonstrated no error in these conclusions, and relief was properly denied.

F. Failure to Call Additional Mitigation Witnesses
Belcher's final claim alleges that trial counsel was ineffective for failing to call six additional mitigation witnesses during his penalty phase. Belcher's postconviction counsel presented the testimony of six witnesses at the evidentiary hearing below in an effort to demonstrate what could have been offered during his penalty phase: Wanda Reddick, Dedrick Baker, James Belcher, Sr., Bernice Johnson, Harriet Jarrett, and Helen Deas. Belcher claims that his attorneys did not investigate or evaluate these available witnesses *252 from his extended family and therefore provided ineffective assistance that prejudiced his trial.
We agree with the lower court that relief is not warranted on this claim. Chipperfield handled the penalty phase of the trial. The trial transcripts indicate that he presented eleven witnesses during this phase, including family members, prison workers, and fellow inmates. Belcher waived the right to testify at the penalty phase. At the evidentiary hearing, when asked about his failure to call the six witnesses, Chipperfield testified that he was not aware that Wanda Reddick existed, and that he did not have that name anywhere in his file. He stated that he spoke with Dedrick Baker's mother, and that his notes from this conversation indicate that Dedrick would not be a good mitigation witness. Chipperfield then testified that he spoke with Belcher, Sr., Deas, and Jarrett prior to the penalty phase, but decided they would not be good witnesses; namely, they did not seem to have a very "realistic" view of Belcher and seemed largely unaware of his criminal history. Chipperfield also testified that, according to his notes, he spoke with Johnson but found she would be of no help. When Buzzell was asked about the failure to call these same witnesses, he testified that most of the names did not sound familiar; however, he specifically recalled Wanda Reddick and testified that he spoke with her and that he and Chipperfield together decided she would not be a good witness. Of the other names he did remember, he only recalled that he and Chipperfield made joint decisions not to use the witnesses in mitigation; he also specifically recalled that Belcher did not want his family to be overly involved in the trial.
In denying relief on this claim, the lower court found Chipperfield's explanations as to why the witnesses were not called to be credible. Furthermore, the court found that their testimony would have been cumulative to the mitigation testimony actually presented. The court also noted that defense counsel's estimation as to how helpful these witnesses could have been was accurate. Thus, the lower court concluded that Belcher did not establish deficient performance on the part of his trial counsel for failing to call these witnesses. Belcher has demonstrated no error in these conclusions, and we agree that he is entitled to no relief on this final claim of ineffective assistance of trial counsel.

2. Cumulative Error
Since we find no merit in the individual ineffective assistance of counsel arguments Belcher makes to this Court on appeal, we affirm the lower court's decision to deny relief on this claim. See Suggs v. State, 923 So.2d 419, 441 (Fla.2005) ("[A] claim of cumulative error will not be successful if a petitioner fails to prove any of the individual errors he alleges.") (citing Bryan v. State, 748 So.2d 1003, 1008 (Fla.1999)).

PETITION FOR WRIT OF HABEAS CORPUS

1. Relief Under Ring v. Arizona, 536 U.S. 584 (2002), and Apprendi v. New Jersey, 530 U.S. 466 (2000)
This Court denied Belcher's Ring challenge made as part of his direct appeal. See Belcher, 851 So.2d at 685 ("As for Belcher's challenge to Florida's death penalty scheme . . . we find that Belcher is not entitled to relief under the holding of Ring."). Belcher is procedurally barred from relitigating this same argument in his habeas petition. See Blackwood v. State, 946 So.2d 960, 976-77 (Fla.2006) (rejecting a Ring/Apprendi claim in Blackwood's habeas petition as procedurally barred since it was raised and rejected as part of his direct appeal).
*253 In addition, the trial court found both the "prior violent felony" aggravator and the "in commission of a violent felony" aggravator in issuing Belcher's death sentence. This Court has denied relief pursuant to Ring in appeals where the trial judge has found these particular aggravators. See Robinson v. State, 865 So.2d 1259, 1265 (Fla.2004) ("This Court has held that the aggravators of murder committed `during the course of a felony' and prior violent felony involve facts that were already submitted to a jury during trial and, hence, are in compliance with Ring."); Owen v. Crosby, 854 So.2d 182, 193 (Fla. 2003) (rejecting the defendant's Apprendi claim in light of Ring on the basis of Bottoson v. Moore, 833 So.2d 693 (Fla. 2002), noting that the "during the course of a felony" and the prior violent felony aggravators "involve[d] circumstances that were submitted to a jury and found to exist beyond a reasonable doubt").

2. Ineffective Assistance of Appellate Counsel
Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of appellate counsel, this Court must determine
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000). In raising such a claim, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981). "If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000) (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)).

A. Inflammatory Photographs
Belcher argues that appellate counsel was ineffective for failing to challenge on direct appeal the trial court's decision to admit various photographs of the victim and publish these photos to the jury. The admission of the crime scene photographs was also discussed above as part of Belcher's 3.851 motion, in which he argues that trial counsel was ineffective for allowing the State to make impermissible appeals to the jurors' emotions.
First, although Belcher argues that appellate counsel was ineffective for the admission of gruesome "photographs," he specifies only one particular photograph in making this argument, has not attached it to his petition, and furthermore does not articulate why it is particularly inflammatory or why it should have been inadmissible under governing case law. Accordingly, this claim is insufficiently pled. See Patton v. State, 878 So.2d 368, 380 (Fla. 2004) (holding that conclusory allegations are insufficient for appellate purposes).
Regardless of this procedural bar, "[t]he test for the admissibility of photographic evidence is relevance, not necessity." Mansfield v. State, 758 So.2d 636, 648 (Fla.2000). A trial court's ruling on the relevancy of evidence and whether or not the probative value is outweighed *254 by the danger of unfair prejudice is governed by an abuse of discretion standard of review. Williamson v. State, 681 So.2d 688, 696 (Fla.1996). "On the other hand, trial courts must be cautious in not permitting unduly prejudicial or particularly inflammatory photographs before the jury." Brooks v. State, 787 So.2d 765, 781 (Fla. 2001). "The law is clear that the trial court has discretion, absent abuse, to admit photographic evidence so long as the evidence is relevant." Thompson v. State, 565 So.2d 1311, 1314 (Fla.1990).
Applying that case law to the instant facts, even without a copy of the photograph(s) to review, the trial judge's decision to admit the exhibits can be supported. From his petition, it appears Belcher is challenging the admission of State's Exhibits J and K, which were two additional pictures of the victim as she was discovered in the bathtub; the State had already admitted one photograph of the crime scene, without objection, as State's Exhibit A. Defense counsel objected to the admission of these two photographs as inflammatory and cumulative, especially since the victim's brother, Ricky Embry, would be identifying them. At a bench conference, the State argued that the pictures were relevant to show the position of the body and to demonstrate that Mr. Embry did not disturb the body upon its discovery. The judge agreed to admit the photos and publish them to the jury as long as Mr. Embry did not get overly emotional in identifying them, finding that they would eliminate any question about the body being tampered with after discovery.
Given the highly deferential nature of this Court's review of a trial court's decision to admit photographs into evidence, it is highly unlikely that appellate counsel would have succeeded with this argument on direct appeal. As explained above, the trial court found the photographs probative to establish that no one interfered with the victim's body after its discovery. Given that appellate counsel most likely would not have been successful raising this issue on direct appeal, failure to argue this claim does not render appellate counsel ineffective. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000).

B. Judgment of Acquittal and Jury Instruction on Circumstantial Evidence Rule
Belcher next asserts that his appellate counsel was ineffective for failing to argue on direct appeal the trial court's denial of his motion for judgment of acquittal as to both the sexual battery count and the first-degree murder count. At the close of the State's case in the guilt phase, defense counsel argued for a judgment of acquittal on both counts. Defense counsel argued that a reasonable hypothesis of innocence could be that Belcher had consensual sex with the victim six days prior to the autopsy date, depositing semen in her that dripped onto her slipper; defense counsel also reasoned that perhaps Belcher did not initially admit to knowing the victim because almost three years had passed between this consensual meeting and the police investigation. Defense counsel further contended that the vaginal injuries could have been the result of rough consensual sex. In denying both motions, the trial court found that the State introduced evidence sufficient to satisfy each of the elements of the two charged offenses; the trial judge also stated that, although circumstantial, the evidence was consistent with the State's theory of guilt and inconsistent with any reasonable hypothesis of innocence that did not venture into the realm of pure speculation.
In affirming Belcher's death sentence on direct appeal, this Court found that there was "sufficient competent and substantial *255 evidence presented to support the conviction for first-degree murder." Belcher, 851 So.2d at 682. Among other evidence cited, we noted the eyewitness testimony connecting Belcher and Embry and the incriminating physical evidence linking him both to her and her home. This Court also affirmed Belcher's conviction for sexual battery on direct appeal. Id. at 679. Given that this Court found the evidence sufficient to support the first-degree murder charge, the sexual battery charge, and Belcher's death sentence, appellate counsel would not have been successful in raising the denial of the judgment of acquittal on direct appeal. Accordingly, failure to argue this claim does not render appellate counsel ineffective. See Rutherford, 774 So.2d at 643.
Belcher also argues that appellate counsel was ineffective for failing to raise the trial court's denial of his request for a special jury instruction on the circumstantial evidence rule. In denying this request, the trial judge recognized that he had the discretion to give the instruction but stated that he did not believe the facts of the case required it and that the standard jury instructions covered the issue of circumstantial evidence. Had appellate counsel raised this issue on direct appeal, it would have been reviewed under an abuse of discretion standard. Parker v. State, 873 So.2d 270, 294 (Fla.2004) ("Although the trial court can give the circumstantial evidence instruction, we have `expressly approved courts which have exercised their discretion and not given the instruction.'") (quoting Monlyn v. State, 705 So.2d 1, 5 (Fla.1997)). Since the trial judge in this case heard arguments both from defense counsel and from the State regarding defense counsel's request for this instruction, and in his discretion decided it was not necessary, this Court most likely would not have reversed that ruling on direct appeal. Thus, appellate counsel cannot be deemed ineffective for failing to raise it, and relief is denied. See Rutherford, 774 So.2d at 643.

C. Motion for a Mistrial
Belcher takes issue with the following remarks from the State's closing argument in the guilt phase:
By killing his victim the defendant made sure that she could not come into this courtroom and identify him as being the person who raped her. . . . [defense counsel] has gotten up here and told you now . . . hey, it was consensual. You know it was some other time. Just a coincidence.
What evidence have you heard that it was consensual? What evidence have you heard that it was consensual? All the evidence indicates quite to the contrary.
. . . .
What consent are we talking about? What evidence did you hear come out of that witness stand saying that she consented to this?

Defense counsel objected and moved for a mistrial. The trial court overruled the objection and denied the motion for a mistrial after the sidebar conference, stating that there had been witnesses (Dr. Floro) who testified about whether or not the sex was consensual. Belcher now claims ineffective assistance of appellate counsel for not pursuing this claim on direct appeal.
Had appellate counsel raised this claim on direct appeal, the comment would have been reviewed under the harmless error standard, and the motion for a mistrial based upon these comments would have been reviewed for an abuse of discretion. See Rodriguez v. State, 753 So.2d 29, 39 (Fla.2000) ("[I]t is well settled that such erroneous comments [on a defendant's right to remain silent] do not require an automatic reversal. . . . [W]e find that the *256 trial court did not abuse its discretion in denying the motion for mistral as to the first comment. Similarly, we find that the second comment, the objection to which the trial court overruled, was harmless beyond a reasonable doubt.") (citations omitted).
First, we conclude the challenged remarks do not constitute an impermissible comment on Belcher's right to remain silent. As we explained in Caballero v. State, 851 So.2d 655, 660 (Fla.2003), "it is permissible for the State to emphasize uncontradicted evidence for the narrow purpose of rebutting a defense argument since the defense has invited the response." Since the theory in the instant case theorized that Belcher and the victim had "rough consensual sex" prior to the murder, but that Belcher was not the person who killed and raped Ms. Embry, the trial judge correctly concluded that the State was merely commenting on the lack of evidence supporting the defense theory that the two engaged in consensual relations.
Regardless, the comment would have had to constitute reversible error for this Court to find merit in the argument on direct appeal and reverse. Id. ("Erroneous comments require reversal only where there is a reasonable possibility that the error affected the verdict.") (citing Rodriguez, 753 So.2d at 39). Given that this Court found "competent and substantial evidence" supporting Belcher's conviction and death sentence, Belcher, 851 So.2d at 682, it is highly unlikely that this Court would have reversed based on this one remark from the prosecutor's closing argument.[9] In addition, regarding Belcher's motion for a mistrial based upon these comments, it is doubtful that this Court would have found that the trial court abused its discretion in denying the motion, given that the judge heard from both parties at a sidebar conference before ruling. Since Belcher has not demonstrated these claims would have merit on direct appeal, appellate counsel cannot be deemed ineffective for failing to pursue them, and Belcher is not entitled to relief. See Rutherford, 774 So.2d at 643.

D. Victim Impact Evidence
In his final claim for relief, Belcher asserts that appellate counsel was ineffective for failing to pursue the issue of victim impact arguments on direct appeal. Prior to the start of the penalty phase, defense counsel brought four separate motions to exclude victim impact evidence, all of which were denied. At the close of the presentation of all penalty phase evidence, defense counsel again raised an objection which was overruled. Belcher claims that the State made the victim impact evidence the main feature of its penalty phase closing arguments, reiterating the testimony of those who testified during the penalty phase. Belcher argues that the victim impact evidence and the State's closing argument reduced the penalty phase portion of the trial to a simple exercise in weighing the comparative worth of his life versus *257 the victim's. Thus, Belcher argues that appellate counsel was ineffective for failing to raise this issue on direct appeal.
On direct appeal, the trial judge's decision to admit this evidence would have been reviewed for an abuse of discretion. See Schoenwetter v. State, 931 So.2d 857, 869 (Fla.) ("The standard applicable to a trial court's ruling on the admission of evidence is whether there has been an abuse of discretion."), cert. denied, ___ U.S. ___, 127 S.Ct. 587, 166 L.Ed.2d 437 (2006). The trial transcripts indicate that the State called four witnesses during the penalty phase: Wanda White, the victim of Belcher's prior violent felony; Martin Embry, the victim's father; Carol Thomas, the victim's best friend; and Ricky Embry, the victim's brother. Thus, the State presented four victim impact witnesses overall, with one being called specifically to introduce evidence regarding Belcher's prior violent felony, which is permissible pursuant to the governing statute.[10] Under our case law we conclude this was a proper presentation of victim impact evidence. See Schoenwetter, 931 So.2d at 870 (finding no abuse of discretion in allowing three witnesses to offer victim impact testimony); Kormondy v. State, 845 So.2d 41, 53-54 (Fla.2003) (finding no abuse of discretion in allowing three witnesses to offer victim impact testimony). Given that this argument would not have been successful on direct appeal, relief is properly denied as an ineffective assistance of appellate counsel claim. See Rutherford, 774 So.2d at 643.

CONCLUSION
For the reasons stated, we affirm the circuit court's denial of postconviction relief and deny Belcher's petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The trial court found that the State proved beyond a reasonable doubt the following aggravators in support of Belcher's death sentence: (1) the defendant had been previously convicted of a felony involving the use or threat of violence to some person (great weight); (2) the capital felony was committed while the defendant was engaged in the commission of the crime of sexual battery (great weight); and (3) the capital felony was especially heinous, atrocious, or cruel (HAC) (great weight). See Belcher, 851 So.2d at 681.
[2] The judge found that all fifteen nonstatutory mitigators presented were proven sufficiently for the court to give them consideration; the trial court assigned "some weight" to all of the mitigators except for numbers 11 and 12, which were assigned "greater weight." The mitigators were as follows: (1) in his relationship with family members, Belcher is considerate, generous and concerned; (2) Belcher loves his parents, brother, sisters, cousins, aunts, and uncles, and they love him; (3) Belcher has not lured anyone else in his family into trouble with the law, he has actually discouraged family members from engaging in criminal behavior, and used himself as an example as to why they should not get involved in criminal activity; (4) Belcher has done many kind things for his family; (5) in spite of personal problems, Belcher has encouraged his cousins to do well; (6) Belcher has often been a mentor and a role model of integrity to his relatives; (7) Belcher has maintained contact with relatives even while in prison and continues to provide them advice and counsel, sometimes over the phone; (8) Belcher was raised in a high crime area in New York and was evidently unable to resist the temptations of crime; (9) Belcher was sent to adult prison at an early age and it affected his development; (10) Belcher has never abused alcohol or drugs; (11) Belcher has shown concern for younger inmates at Apalachee Correctional Institute (ACI) and has had a positive effect on their lives by being a tutor, basketball coach, a good listener, a counselor to young inmates, and a peacemaker; (12) Belcher can continue to help other inmates in the future, as evidenced by those who testified at the penalty phase; (13) Belcher had not been a discipline problem either in prison or in the pretrial detention facility for the period of his recent incarceration; (14) Belcher displayed proper behavior during trial; and (15) Belcher displayed appropriate remorse and genuine concern for the distress caused to his family and the victim's family during the hearing held pursuant to Spencer v. State, 615 So.2d 688 (Fla.1993). See 851 So.2d at 681-82.
[3] In his 3.851 motion, Belcher alleged that trial counsel was ineffective for the following reasons: (1) failure to object to State's voir dire comment misstating the State's burden of proof and misstating Belcher's presumption of innocence; (2) allowing comments denigrating the role of the jury; (3) failure to object to and request a curative instruction to the State's voir dire comment which failed to distinguish Belcher's lesser burden of proof to establish mitigating circumstances; (4) failure to object to and request a curative instruction to the State's voir dire comment indicating that Belcher had the burden of proving that the mitigating circumstances must outweigh the aggravating circumstances, and not vice versa; (5) failure to object to and request a curative instruction to the State's comments indicating that a killing done instantly after deciding to kill is premeditated, first-degree murder; (6) failure to object to and request a curative instruction to the State's voir dire comment suggesting that the State did not have to prove intent for first-degree, premeditated murder; (7) conceding that the victim suffered a sexual battery, the predicate offense needed for a felony first-degree murder conviction in the subject case; (8) allowing impermissible appeals to the emotions and sympathy of the jurors; (9) failure to use a defense gynecologist to counter the State's expert's opinion that the physical evidence in the case evidenced a forcible, sexual battery; (10) failure to object to nonstatutory aggravating circumstances in the form of testimony about the nutritious food, diversions, risk of escape, and taxpayer expense incurred by prisoners in prison; and (11) failure to call certain witnesses to testify at the penalty phase.

In addition, Belcher raised the following claims: (12) Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), require that aggravating circumstances be charged in the indictment and found by the jury, and that the jury's death recommendation be unanimous; (13) a Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), violation regarding the State's failure to disclose the mishandling of DNA-related items at crime labs; and (14) cumulative errors of defense counsel.
[4] Huff v. State, 622 So.2d 982 (Fla.1993).
[5] The trial judge granted an evidentiary hearing on the following claims: whether trial counsel was ineffective for (1) failure to object and request a curative instruction in response to State's voir dire comment to jurors misstating the State's burden of proof and misstating Belcher's presumption of innocence; (2) failure to object to and request a curative instruction to the State's voir dire comment which failed to distinguish Belcher's lesser burden of proof to establish mitigating circumstances; (3) failure to object to and request a curative instruction to the State's comments indicating that a killing done instantly after deciding to kill is premeditated, first-degree murder; (4) conceding that the victim suffered a sexual battery, the predicate offense needed for a felony first-degree murder conviction in the subject case; (5) failure to use a defense gynecologist to counter the State's expert's opinion that the physical evidence in the case evidenced a forcible, sexual battery; (6) failure to object to nonstatutory aggravating circumstances in the form of testimony about the nutritious food, diversions, risk of escape, and taxpayer expense incurred in prison; (7) failure to call certain witnesses to testify at the penalty phase; and finally on (8) a possible Brady violation regarding the State's failure to disclose the mishandling of DNA-related items at crime labs and (9) cumulative errors of defense counsel.
[6] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[7] Belcher's argument that Chipperfield "compounded the problem" by telling the prospective jurors that mitigating circumstances must be proven beyond a reasonable doubt is clearly refuted by the record. In his brief, Belcher cites the following statement from voir dire:

Mr. Chipperfield: Mr. De La Rionda mentioned that if we get to a penalty phase, if there's a conviction of first-degree murder and we have this penalty phase that the purpose of that penalty phase is for the jurors to consider aggravating circumstances and mitigating circumstances. Aggravating circumstances are certain facts about the crime or about the person who's convicted that under Florida law suggest that death might be an appropriate penalty. And they're all defined by statute and they have to be proven beyond a reasonable doubt. Mitigating  do you all understand that?
(Affirmative response from the prospective jurors).
Although Belcher does not explain the error with the above statement, presumably he is referring to Chipperfield explaining the burden of proof for the aggravators but failing to explain it for the mitigators. However, Chipperfield's comment was part of a larger discussion about mitigation in which he went on to explain the types of things that can be offered as mitigation and asked the prospective jurors if they would be able to use that type of evidence in determining if a life sentence is more appropriate. Accordingly, this subclaim is refuted by the record, and relief was properly denied.
[8] The standard jury instruction on premeditation reads as follows:

"Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
The question of premeditation is a question of fact to be determined by you from the evidence. It will be sufficient proof of premeditation if the circumstances of the killing and the conduct of the accused convince you beyond a reasonable doubt of the existence of premeditation at the time of the killing.
Fla. Std. Jury Instr. (Crim). 7.2.
[9] In addition, appellate counsel did challenge another remark from the State's closing argument on direct appeal, arguing that it improperly suggested that Belcher had killed the victim to eliminate her as a witness. Belcher, 851 So.2d at 682. This Court concluded: "[a]lthough the prosecutor arguably crossed the line into discussion of matters that could also support the avoid arrest aggravator . . ., we find that any resulting error was harmless." Id. at 682-83. As this Court held in Davis v. State, 928 So.2d 1089, 1126-27 (Fla. 2005) (citing Atkins v. Dugger, 541 So.2d 1165, 1167 (Fla.1989)), "appellate counsel is not required to present every conceivable claim." Since appellate counsel did challenge one of the prosecutor's comments on direct appeal, it does not appear that counsel failed to review those comments for appellate purposes.
[10] Section 921.141(7), Florida Statutes, (2006) allows for the introduction of victim impact evidence. It provides as follows:

Once the prosecution has provided evidence of the existence of one or more aggravating circumstances as described in subsection (5), the prosecution may introduce, and subsequently argue, victim impact evidence to the jury. Such evidence shall be designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death. Characterizations and opinions about the crime, the defendant, and the appropriate sentence shall not be permitted as a part of victim impact evidence.