34 So.3d 187 (2010)
Dorothy HARRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D09-2148.
District Court of Appeal of Florida, First District.
May 6, 2010.
*188 Nancy A. Daniels, Public Defender, and David A. Davis, Assistant Public Defender, Tallahassee, for Appellant.
*189 Bill McCollum, Attorney General, and Donna A. Gerace, Assistant Attorney General, Tallahassee, for Appellee.
KAHN, J.
Dorothy Harris appeals her conviction for conspiracy to possess hydrocodone, alleging the trial court erred on two separate occasions by permitting testimony that implicated appellant in other crimes. We reverse and remand for a new trial.

PROCEDURAL & FACTUAL BACKGROUND
The events giving rise to Harris's prosecution occurred on November 18, 2008, when appellant's brother, David Vaughns, drove to a Jacksonville pharmacy with a prescription for Lorcet (hydrocodone). When Vaughns arrived at the pharmacy's drive-thru window, he handed the prescription to a pharmacy technician and left with the understanding that he would return in a short while to pick up the medication. The technician noticed that Lorcet was misspelled and that the prescription, written on a pad from Jacksonville Pediatric Associates, was for a James Williams, born in 1984. In addition to the spelling error, the patient's age clued the technician's suspicions, as the pediatric clinic normally would not see persons older than 18 or 21.
Police arrested Vaughns when he returned to pick up the prescription, finding approximately 120 hydrocodone pills and another prescription in the car. While still at the scene, police asked Vaughns to contact the owner of the vehicle. Vaughns phoned appellant, who arrived shortly thereafter. Harris denied any knowledge of the prescription Vaughns had tried to fill, and Vaughns told police that he received the prescription from a person he knew as "Junior."
Vaughns maintained this version of events in the months leading up to prosecution. The State charged Harris and Vaughns by amended information with one count of conspiracy to possess hydrocodone. The same information also charged Vaughns with trafficking in hydrocodone and possession or attempted possession of hydrocodone by fraud. Harris proceeded to trial by jury.
At trial, Vaughns testified for the State, asserting Harris provided the prescription and asked her brother to fill it. Appellant, Vaughns explained, had stolen a prescription pad from the pediatric clinic where she once worked as a medical assistant. Vaughns filled in some remaining blanks by stating that Harris also gave him the keys to her car so he could get to the pharmacy. Vaughns said he knew the prescription was fraudulent, but agreed to fill it anyway.
On cross-examination, defense counsel asked Vaughns whether he testified as to Harris's involvement because it would help him secure a favorable sentence. Vaughns replied, "Not necessarily. When I told them that that night, but she was going to jail anyway that night. She had a warrant." Defense counsel objected and moved for a mistrial, arguing that the testimony regarding an outstanding warrant was prejudicial and not elicited. The trial court overruled the objection, finding the information "relevant" and also that defense counsel "invited" this explanation by the preceding line of questioning. Having overruled the objection, the court offered to provide a curative instruction, which defense counsel declined.
The State also called Dr. Nicole Taylor, a pediatrician at the clinic where Harris had once worked. Dr. Taylor testified that appellant had been fired from the clinic about a month before the incident leading to her arrest. On cross-examination, *190 Dr. Taylor stated that Harris was let go as a result of a "management decision," but had no specific knowledge as to why the clinic terminated Harris's employment. On redirect, the prosecution asked, "Was there a time . . . Harris was the suspect of prescription fraud, aside from this case?" At this point, defense counsel entered an objection, which the court sustained.
The jury convicted appellant as charged. Harris moved for a new trial, which the court denied. The trial court adjudicated appellant guilty of the charged offense and sentenced her to 15 years in prison as an habitual offender.

ANALYSIS
We review a ruling on the admissibility of evidence for abuse of discretion. See Welty v. State, 402 So.2d 1159, 1162-63 (Fla.1981). "Similar fact evidence of other crimes, wrongs, or acts . . . is inadmissible when the evidence is relevant solely to prove bad character or propensity." § 90.404(2)(a), Fla. Stat. (2008). The State does not deny that Vaughns implicated Harris in some other, irrelevant crime when he referenced the outstanding warrant for appellant's arrest. Rather, the State relies on the "invited error" doctrine to assert that defense counsel "opened the door" to the objectionable mention of the warrant. See Goodwin v. State, 751 So.2d 537 (Fla.1999) (stating that "a party may not make or invite error at trial and then take advantage of the error on appeal").
The dissent argues that this point is barred because the defense refused the trial court's offer of a curative instruction. Where the trial court sustains an objection to improper testimony, ordinarily the objecting party must request and avail itself of an instruction from the court that the jury disregard the objectionable evidence. See Duest v. State, 462 So.2d 446, 448 (Fla.1985) (stating that "[t]he proper procedure to take when objectionable comments are made is to object and request [a curative] instruction . . ."). Such rule would not apply here, however, where the court actually overruled the defendant's objection. Ralston v. State, 555 So.2d 443, 444 (Fla. 4th DCA 1990) (observing that "any curative instruction would have been futile after the trial court overruled the objection and specifically stated that it found the objectionable evidence to be proper"); Johnson v. Canteen Corp., 528 So.2d 1364, 1365 (Fla. 3d DCA 1988) (holding plaintiff "was not required to seek additional forms of relief in order to preserve the matter for appeal" "[o]nce her objection to [the witness's] testimony was overruled") (citing Simpson v. State, 418 So.2d 984 (Fla.1982)); see also Salazar v. State, 991 So.2d 364, 382 (Fla.2008) (Pariente, J., dissenting) (recognizing two standards of review for "the introduction of improper comments depending on whether the trial court properly recognized the error and sustained [an] objection or gave a curative instruction (abuse of discretion) or whether the trial court failed to recognize the error and improperly overruled the objection (harmless error to the comments, abuse of discretion to the denial of the mistrial)") (citing Belcher v. State, 961 So.2d 239, 255 (Fla.2007)); Robinson v. State, 881 So.2d 29, 31 n. 1 (Fla. 1st DCA 2004) (Ervin, J., dissenting) (agreeing "with the majority's tacit conclusion that the error was preserved, despite the failure of defense counsel to seek either a curative instruction or a mistrial, because of the contemporaneous objection, which was overruled") (citing Holton v. State, 573 So.2d 284 (Fla.1990)). Peculiar and inconsistent though it might have been for the court to offer to cure what it had declined to rule inadmissible, appellant could not have waived this point, because the response from Vaughns came into evidence.
*191 Vaughns maintained for five months leading up to trial that Harris was not involved in the fraud. At trial, however, Vaughns testified that he only tried to procure the hydrocodone at Harris's instruction. When confronted with this inconsistency on cross-examination, Vaughns asserted non-responsively that he changed his testimony because there was a warrant out for Harris's arrest on a different offense, and he did not believe his testimony in the instant matter could prejudice her. Far from inviting the error, defense counsel only alerted the jury that Vaughns had made a plea agreement and thus had a motive to offer more favorable testimony for the State.
Because we find error, we consider next whether the State has met its burden to show that the error was "harmless beyond a reasonable doubt." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). "[T]he improper admission of . . . irrelevant collateral crimes evidence is presumptively harmful." Castro v. State, 547 So.2d 111, 115 (Fla.1989). The State does not meet its burden merely by showing "that the evidence against a defendant was overwhelming." Id. Where, as here, the only evidence against the defendant consisted entirely of the testimony of her brother who, none dispute, actually presented the forged prescriptionwe are unable to say that the error was harmless beyond a reasonable doubt. That the jury knew Harris was wanted in connection with another offense could well have made a significant difference in a case hinging entirely on Vaughns' credibility. The prejudicial effect only compounded when the prosecutor improperly inquired of Dr. Taylor whether Harris was suspected of prescription fraud in her prior employment with the pediatric clinic. In fact, this subsequent allusion to irrelevant, inadmissible other crimes evidence provided a strand connecting Harris with the subject offense. Although we would likely not reverse based solely on the improper question, we have considered its import in our harmless error analysis.
REVERSED and REMANDED for a new trial.
PADOVANO, J., concurs, and WETHERELL, J., dissents with opinion.
WETHERELL, J., dissenting.
I respectfully dissent.
I agree with the majority that Vaughns' statement that Harris was going to jail because she had a warrant was inadmissible character evidence and that it was not a response invited by the question Vaughns was asked. However, I disagree that reversal is required because of the trial court's failure to grant a mistrial based upon the statement. In my view, defense counsel invited the error raised on appeal by rejecting the trial court's offers for a curative instruction. And, to the extent the harmless error standard applies in this case, I would conclude that the error was harmless beyond a reasonable doubt, even when Vaughns' statement is considered in conjunction with the prosecutor's question to a different witness implying that Harris had previously been suspected of prescription fraud by her employer.
"The proper procedure to take when objectionable comments are made is to object and request an instruction from the court that the jury disregard the remarks." Duest v. State, 462 So.2d 446, 448 (Fla.1985); see also Palmer v. State, 486 So.2d 22, 23 (Fla. 1st DCA 1986) ("Generally, both a motion to strike the allegedly improper testimony as well as a request for the trial court to instruct the jury to disregard the proffered testimony are thought to be necessary prerequisites to a motion for mistrial."). Here, although defense *192 counsel objected to Vaughns' statement, counsel did not move to strike the testimony or request a curative instruction. Thus, the trial court's denial of the motion for mistrial could be affirmed on this basis alone.
But there is more. In response to the motion for a mistrial, the trial court, on its own initiative, offerednot once, but twiceto instruct the jury to disregard Vaughns' statement about Harris' having a warrant. Defense counsel rejected the trial court's offers for a curative instruction. The state then requested "in an abundance of caution" that the trial court give the jury a curative instruction, but the trial court denied the request, stating:
Ms. Smith's [counsel for the state] request that I instruct the jury to disregard the last remark of the witness is probably a good suggestion; however, since the defense has objected to me doing that, I'm not going to do it.
Although it may have been sound trial strategy for defense counsel to reject the trial court's offer for a curative instruction (so as not to emphasize the testimony to the jury), any error that could have been cured by such an instruction was invited error that cannot serve as a basis for reversal. See Sullivan v. State, 303 So.2d 632, 635 (Fla.1974); Gonzalez v. State, 511 So.2d 703, 704 (Fla. 3d DCA 1987); Clemon v. State, 473 So.2d 271 (Fla. 3d DCA 1985).
It is well-settled that a motion for mistrial should be granted only "in cases of absolute necessity." Salvatore v. State, 366 So.2d 745, 750 (Fla.1978). Where, as here, the testimony giving rise to the motion for mistrial improperly reflects on the defendant's character, a mistrial should be granted only if "the error is so prejudicial and fundamental that it denies the accused a fair trial." Lubin v. State, 754 So.2d 141, 143 (Fla. 4th DCA 2000) (quoting Buenoano v. State, 527 So.2d 194, 198 (Fla.1988)); see also Cole v. State, 701 So.2d 845, 853 (Fla.1997) ("A motion for mistrial should be granted only when it is necessary to ensure that the defendant receives a fair trial."). However, "where the defendant rejects the trial court's offer to cure the effect of the inadmissible testimony, a mistrial should not be granted except in the extreme case where the comment is `so prejudicial as to vitiate the entire trial.'" Lubin, 754 So.2d at 143 (quoting Duest, 462 So.2d at 448); see also Breedlove v. State, 413 So.2d 1, 7 (Fla.1982) ("Improper remarks can be cured by ordering the jury to ignore them unless they are so objectionable that such instruction would be unavailing.").
In my view, Vaughns' statement that Harris was going to jail because she had a warrant was not so prejudicial that it vitiated the entire trial. The statement takes up less than two lines of a 278-page trial transcript. The statement was an isolated comment that did not, in any way, become the focus of the trial, and it was not even mentioned by the state in its closing argument. See Cole, 701 So.2d at 853 (affirming denial of motion for mistrial based upon testimony that "was isolated and inadvertent and was not focused upon").
The majority applies the harmless error standard from DiGuilio to determine that reversal is required because of the trial court's failure to grant a mistrial based upon Vaughns' statement that Harris had a warrant. The harmless error standard is the proper standard of review for an overruled defense objection. See Snelgrove v. State, 921 So.2d 560 (Fla.2005). However, the abuse of discretion standardnot the harmless error standard applies where the trial court does not expressly rule on the objection before ruling on the motion for mistrial. See Dessaure v. State, 891 So.2d 455, 465 n. 5 (Fla.2004); *193 but cf. Salazar v. State, 991 So.2d 364, 381-83 (Fla.2008) (Pariente, J., specially concurring). That is what happened in this case.
The trial transcript reflects that defense counsel objected and asked to approach sidebar immediately after Vaughns' statement that Harris was going to jail because she had a warrant. The trial court did not rule on the objection, but rather stated "[w]ell, go ahead and finish your questioning." Defense counsel did not press for a ruling on the objection; he simply said "[t]hank you, Your Honor" and proceeded with his questioning.
After defense counsel completed his questioning, the trial court excused the jury and the following colloquy was had:
THE COURT: . . . All right Mr. Espenship [defense counsel], what do you want?
[Defense counsel]: Your Honor, I'd object and request the court to enter an order of mistrial. That testimony was not elicited, and it could be prejudicial to my client, regardingwell, he indicated that there was a warrant for her arrest, it could be prejudicial.
THE COURT: Well, number one, the answer was in response to a question asked by the defense. Secondly, you had pressed him on his attitude, what he told the police, whether she was going to jail or not. And I think his answer was in response to the line of questioning as to what he knew about his sister going to jail that night. So, for that reason, it is arguably relevant; however, I will instruct the jury to disregard the last remark of the witness concerning that, if you want me to. Obviously that adds emphasis to it by saying disregard it, but if you want me to do that, I will do that.
[Defense counsel]: Okay. We'll just preserve for appeal, Your Honor, if necessary.
At no point did the trial court expressly rule on defense counsel's objection (or the motion for mistrial), although the court's comments seem to imply that it was overruling the objection and denying the motion for mistrial. However, the comments are also susceptible to the interpretation that the court was sustaining the objection because there would have been no reason for the trial court to offer a curative instruction if it was overruling the objection.
Based on the error invited by defense counsel and the fact that Vaughns' statement did not vitiate the entire trial, I would conclude that the trial court did not abuse its discretion in denying Harris' motion for mistrial.
Even if it were appropriate to apply the DiGuilio standard in this case, I would conclude that the error in admitting Vaughns' statement was harmless beyond a reasonable doubt. I cannot see how this isolated statement had any effect on the outcome of this case. Contrary to the majority's suggestion, there is nothing in the record that expressly or impliedly connects Vaughns' statement to the prosecutor's question to a different witness (more than 40 pages later in the trial transcript) implying that Harris was previously suspected of prescription fraud. And the trial court sustained defense counsel's objection to this question before any testimony was given and there was no other reference to the issue at the trial.
For similar reasons, I would also conclude that the trial court did not abuse its discretion in denying Harris' motion for new trial based upon the prosecutor's question implying that Harris was previously suspected of prescription fraud. The trial court sustained defense counsel's objection before any testimony was provided *194 on the issue. The question, albeit improper, was isolated and did not in any way become the focus of the trial.
Accordingly, I respectfully dissent from the decision to reverse Harris' conviction and remand for a new trial. I would affirm.